STATE OF NORTH CAROLINA v. MARK LORENZO SQUIRES

No. 428A00

(Filed 7 November 2003)

## 1. Homicide— felony murder—sale of cocaine—motion to dismiss—sufficiency of evidence

The trial court did not err in a double first-degree murder case by denying defendant's motions to dismiss related to the sale of cocaine as an underlying felony to support the felony murder of one of the victims, because: (1) the evidence was sufficient for a reasonable juror to find attempted sale of cocaine which is a lesser-included offense of sale of cocaine; (2) actions to which defendant has admitted, including possession of the drugs and scales while attempting to effectuate the sale, are sufficient to establish both intent and an act in preparation of an actual transfer of cocaine; (3) defendant's contention that the language "sale of cocaine" on the verdict sheet required the jury to find that a completed sale occurred is without merit when the trial court instructed the jury that either a completed sale or an attempted sale of cocaine sufficed to support a conviction for felony murder; and (4) although defendant contends some jurors may have found a completed sale while others found an attempted sale, any member of the jury who found the elements constituting a sale of cocaine must necessarily have found the elements of attempted sale of cocaine.

## 2. Homicide— first-degree murder—short-form indictment—notice

The short-form indictment used to charge defendant with first-degree murder was constitutional because it gave defendant sufficient notice of the nature and cause of the charges against him.

## 3. Homicide— first-degree murder—sufficiency of indictment

The trial court did not err by entering judgment upon defendant's convictions for first-degree murder based on indictments

purportedly alleging only second-degree murder because the indictments were sufficient to charge first-degree murder, the crime for which defendant was convicted.

### 4. Sentencing— aggravating circumstances—murder part of course of conduct

The trial court did not err in a capital sentencing proceeding following defendant's conviction of one of two first-degree murders solely on the basis of the felony murder rule by submitting the N.C.G.S. § 15A-2000(e)(11) aggravating circumstance that the murder was part of a course of conduct including crimes of violence against others based on defendant's murder of a second victim, because: (1) where the evidence supports a finding of more than one underlying felony, the (e)(11) aggravating circumstance may be submitted since only one of the underlying felonies merges as an element of the first-degree murder conviction; and (2) the murder of another victim could properly be used to support submission of the (e)(11) circumstance for one of the victims when the evidence supported a finding of the felony murder based on attempted sale of cocaine.

### 5. Homicide— first-degree murder—short-form indictment— failure to allege aggravating circumstances

The short-form murder indictment is both statutorily and constitutionally sufficient without the inclusion of the N.C.G.S. § 15A-2000(e) aggravating circumstances.

### 6. Homicide— first-degree murder—short-form indictment— failure to allege elements

Although defendant contends his rights under the Eighth and Fourteenth Amendments were violated by the trial court's entry of a death sentence under an indictment failing to allege all of the elements of capital murder, our Supreme Court has already concluded that the crime of first-degree murder and the accompanying maximum penalty of death are encompassed within the language of the short-form murder indictment.

### 7. Sentencing— aggravating circumstances—felony involving use or threat of violence

The trial court did not err in a double first-degree murder case by submitting the N.C.G.S. § 15A-2000(e)(3) aggravating circumstance that defendant had been previously convicted of a

felony involving the use or threat of violence, because there is no requirement that the conviction for the prior felony precede the occurrence of the capital murder itself.

**8. Sentencing— nonstatutory mitigating circumstance— defendant's prison sentence for another crime**

The trial court did not err in a double first-degree murder case by failing to submit the nonstatutory mitigating circumstance that defendant had been sentenced to 105 years' imprisonment in the state of Georgia for his convictions of crimes that he committed there, because defendant's prison sentence for another crime is not relevant as a mitigating circumstance.

**9. Sentencing— death penalty—proportionality**

The trial court did not err in a double first-degree murder case by sentencing defendant to the death penalty for one of the murders because: (1) the jury's finding of three distinct aggravating circumstances submitted were supported by the evidence, and our Supreme Court has deemed the N.C.G.S. § 15A-2000(e)(3) and (e)(11) aggravating circumstances standing alone to be sufficient to sustain a death sentence; (2) nothing in the record suggested that defendant's death sentence was imposed under the influence of passion, prejudice, or other arbitrary factor; and (3) defendant was convicted of two first-degree murders, one on the basis of premeditation and deliberation and under the felony murder rule, and the other solely under the felony murder rule.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Judge Jerry R. Tillett on 15 May 2000 in Superior Court, Pitt County, upon a jury verdict finding defendant guilty of first-degree murder. On 17 September 2002, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of an additional judgment. Heard in the Supreme Court 6 May 2003.

*Roy Cooper, Attorney General, by William P. Hart, Special Deputy Attorney General, and Amy C. Kunstling, Assistant Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Benjamin Dowling-Sendor, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

On 27 July 1998 defendant Mark Lorenzo Squires was indicted on two counts of first-degree murder in connection with the deaths of Randy House and Erick Keech. Defendant was tried capitally and was found guilty on both counts of first-degree murder. For the murder of House, defendant's conviction was based on premeditation and deliberation and felony murder with the sale of cocaine as the underlying felony. For the murder of Keech, defendant's conviction was based solely on felony murder with both the sale of cocaine and House's murder as the underlying felonies. Following a capital sentencing proceeding, the jury recommended that defendant be sentenced to life imprisonment without parole for House's murder and to death for Keech's murder.

The State's evidence tended to show that on 4 July 1998, House, a drug dealer, was planning to make a $4,500 purchase of crack cocaine from defendant. The crack cocaine was being purchased from defendant for both House and Keech. Keech was known to drive a 1981 burgundy Oldsmobile.

On 5 July 1998 police responded to a call that led to an abandoned 1981 burgundy Oldsmobile on Contentnea Street in Greenville, North Carolina. The police found the windows of the car rolled down on both the front and back driver's side. The police also found a large quantity of blood on the back floorboards and elsewhere in the car and a small bullet hole in the top of the front driver's side door.

On 15 July 1998 men doing yard work on Atlantic Avenue in Greenville found two bodies behind a shed. The decomposition of the bodies suggested that they had been there for some time. Police identified the bodies as Keech and House.

Defendant, identifying himself as William Ferrell, voluntarily went to the Greenville Police Department on 20 July 1998 to speak with the police. Defendant told the police that he had known House for approximately six months and had bought drugs from him in the past. Additionally, defendant told police that he wanted to buy "some smoke" from House on the night of 4 July 1998 but that House failed to appear for the exchange.

On 23 July 1998 the New Bern police received a call from Ellis Tripp, a local resident. Tripp told police that defendant was at his home, that defendant was driving a tan Mazda multi-purpose van with bloodstains on the seats, that defendant had said the bloodstains

were the result of a homicide in Greenville in which defendant and someone else had murdered two men and disposed of the bodies, and that defendant was taking the van to Cape Carteret the next day to have the van reupholstered and wanted Tripp to follow him as a shield. The following day, 24 July 1998, Tripp cooperated with the police, who subsequently arrested defendant.

After he was arrested, defendant again reported to police officers that his name was "William Ferrell"; but defendant later told them his real name. Defendant told police that he met House and Keech at the Player's Club Apartments on the night of the shootings to collect a $5,000 debt from a past drug transaction. Defendant said that he thought House and Keech were going to rob and shoot him and that he shot the two victims, dumped their bodies on Atlantic Avenue, and abandoned the car near the river. When asked if anyone was with him during the shooting, defendant responded that he did not tell on others.

Defendant testified on his own behalf at trial. His testimony tended to show that he regularly sold cocaine and marijuana to House. Defendant did not carry a gun, but Lucius Gaston a/k/a Puppet, who accompanied him on drug transactions, carried a weapon. On 4 July 1998 House called to arrange a drug buy which was to take place at Players Club Apartments. Defendant and Puppet drove to the apartments in the Mazda van. Defendant had with him the drugs and digital scales to weigh the cocaine. House arrived in Keech's car with Keech driving and House sitting in the passenger seat. Puppet got into the car behind Keech, and defendant got into the car behind House. Defendant asked House for the money twice. House "drew down" on Puppet. Puppet grabbed House's gun, a nine-millimeter pistol, and then shot House with his own gun, a .38-caliber "police special." Keech tried to grab Puppet, the two of them struggled, and defendant heard three shots. Defendant drove Keech's car to the shed on Atlantic Avenue where he and Puppet dumped the bodies. Defendant wrapped Puppet's .38-caliber and House's nine-millimeter weapons in a sock and plastic bag and disposed of them behind a Pantry convenience store.

Defendant later told his cellmate that he had shot the victims. Defendant did not mention Puppet. The police recovered the nine-millimeter pistol behind the Pantry, but the .38 was not found.

The pathologist who performed the autopsy on the bodies of House and Keech determined that the men had probably been

dead for ten days when their bodies were found. The body of House had two gunshot wounds. One was to the left side of the back of his head and the other was to the left side of the back of his neck. Keech's body had a gunshot wound to the right side of his face. The pathologist determined that the cause of death for both House and Keech was the fatal gunshot wounds to each of their heads.

## GUILT-INNOCENCE PHASE

**[1]** Defendant first contends that the trial court erred by denying defendant's motions to dismiss related to the sale of cocaine as an underlying felony to support the felony murder of Keech and in instructing the jury to consider sale of cocaine as an underlying felony to support the felony murder of Keech. The basis for this contention is that the evidence was insufficient to show that defendant completed the sale of cocaine. We disagree.

The jury convicted defendant of Keech's murder solely on the theory of felony murder. The verdict sheet listed two predicate felonies to support a finding of felony murder: (1) "other murder" (that is, the murder of Randy House), and (2) "sale of cocaine." The trial judge instructed the jury on sale of cocaine as follows:

> If you find from the evidence beyond a reasonable doubt that on or about the date that's been alleged, the defendant . . . *committed or attempted to commit* sale of cocaine with the use or possession of a deadly weapon, then it would be your duty to return a verdict of first-degree murder under the felony murder rule as to this alleged felony.

(Emphasis added.) The jury found defendant had committed both underlying felonies submitted to support a conviction of felony murder for Keech's death.

Defendant argues that the State presented insufficient evidence to prove a completed sale of cocaine in that the State failed to prove that a transfer of cocaine took place on the night in question. Defendant further argues that the words "sale of cocaine" on the verdict sheet suggested to the jurors that they were required to find a completed sale rather than an attempted sale of cocaine. Thus, according to defendant, the verdict form improperly provided an opportunity for jurors to find a predicate felony that was unsupported by the evidence.

STATE v. SQUIRES

[357 N.C. 529 (2003)]

In determining the sufficiency of the evidence to withstand a motion to dismiss and to be submitted to the jury, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence is such relevant evidence as is necessary to persuade a rational juror to accept a conclusion. *State v. Frogge*, 351 N.C. 576, 584, 528 S.E.2d 893, 899, *cert. denied*, 531 U.S. 994, 148 L. Ed. 2d 459 (2000). The trial court must review the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993).

Viewed under this standard, the evidence in this case was sufficient for a reasonable juror to find attempted sale of cocaine, a lesser-included offense of sale of cocaine. The elements of attempt are an intent to commit the substantive offense and an overt act which goes beyond mere preparation but falls short of the completed offense. *State v. Robinson*, 355 N.C. 320, 338, 561 S.E.2d 245, 257, *cert. denied*, 537 U.S. 1006, 154 L. Ed. 2d 404 (2002). In *State v. Moore*, 327 N.C. 378, 395 S.E.2d 124 (1990), this Court defined the sale of cocaine as the " 'transfer of [cocaine] for a specified price payable in money.' " *Id.* at 382, 395 S.E.2d at 127 (quoting *State v. Creason*, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985)). Thus, to have sale of cocaine submitted to the jury as an underlying felony, the State was required to produce evidence that defendant intended to sell cocaine and committed an overt act beyond mere preparation towards the transfer of cocaine for a monetary price.

As defendant concedes, the evidence, viewed in the light most favorable to the State, was sufficient to prove an attempted sale of cocaine. Defendant testified that he had a business relationship with House involving several drug transactions over a six-month period of time and that House had contacted him on 4 July 1998 to plan an exchange of drugs for money that night at the Player's Club Apartments. Defendant and Puppet went to the prearranged meeting place. Defendant brought to the meeting both the cocaine and digital scales with which to weigh the cocaine. When House and Keech arrived, defendant entered Keech's car in order to effect the sale. According to defendant, he asked House twice for the money, after which House and Keech attempted to rob defendant and Puppet; and both victims were then shot as an act of self-defense. The actions to

which defendant has admitted—possession of the drugs and scales while attempting to effectuate the sale—are sufficient to establish both intent and an act in preparation of an actual transfer of cocaine. This evidence is sufficient to satisfy the elements of attempted sale of cocaine.

Defendant's contention that the language "sale of cocaine" on the verdict sheet required the jury to find that a completed sale occurred is without merit. The trial court clearly instructed the jury that either a completed sale or an attempted sale of cocaine sufficed to support a conviction for felony murder. "We presume 'that jurors . . . attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.' *Francis v. Franklin*, 471 U.S. 307, 324 n.9, 85 L. Ed. 2d 344, 360 n.9 (1985)." *State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208, *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993). Accordingly, we can assume in this case that the jury understood the notation on the verdict sheet to be inclusive of both potential predicate felonies, namely, a completed sale of cocaine or an attempted sale of cocaine.

Defendant argues that some jurors may have found a completed sale while others found an attempted sale. Even if some jurors found a completed sale of cocaine rather than an attempted sale, this discrepancy would not change the result. When a jury finds the facts necessary to constitute one offense, it also inescapably finds the facts necessary to constitute all lesser-included offenses of that offense. *See State v. Vance*, 328 N.C. 613, 623, 403 S.E.2d 495, 502 (1991); *State v. Jolly*, 297 N.C. 121, 130, 254 S.E.2d 1, 7 (1979). Attempted sale of cocaine is a lesser-included offense of the sale of cocaine. Therefore, any member of the jury who found the elements constituting a sale of cocaine must necessarily have found the elements of attempted sale of cocaine. Since the evidence at trial was sufficient to prove attempted sale of cocaine and since all jurors necessarily found an attempted sale, a determination of whether the evidence supported a completed sale of cocaine is not necessary to resolve this issue. We hold that the trial court's submission to the jury of "sale of cocaine" as a predicate felony to support defendant's felony murder conviction for Keech's death was not error.

[2] Defendant next argues that his rights under the United States and North Carolina Constitutions were violated when he was tried for first-degree murder based on the short-form murder indictments in

that the indictments allege only the elements of second-degree murder. The United States Supreme Court has consistently declined to impose a requirement mandating states to prosecute only upon indictments which include all elements of an offense. *See, e.g., Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3, 147 L. Ed. 2d 435, 447 n.3 (2000); *Alexander v. Louisiana*, 405 U.S. 625, 633, 31 L. Ed. 2d 536, 543-44 (1972). The Court has, however, held the Sixth Amendment due process requirements to apply to the states. *In re Oliver*, 333 U.S. 257, 92 L. Ed. 682 (1948). Under the Sixth Amendment defendants have the right "to be informed of the nature and cause of the accusation[s]" against them. U.S. Const. amend. VI. This Court has consistently held that the short-form first-degree murder indictment serves to give a defendant sufficient notice of the nature and cause of the charges against him or her. *See, e.g., State v. Braxton*, 352 N.C. 158, 531 S.E.2d 428 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000). Additionally, this Court held in *State v. Avery*, 315 N.C. 1, 14, 337 S.E.2d 786, 793 (1985), which involved an indictment identical in substance to the one in this case, that "[t]he indictment in question complies with the short-form indictment authorized by [N.C.]G.S. [§] 15-144 and is therefore sufficient to charge first[-]degree murder without specifically alleging premeditation and deliberation or felony murder." *Id.*; *see also State v. Kilpatrick*, 343 N.C. 466, 472, 471 S.E.2d 624, 628 (1996). We find no compelling reason to depart from our prior holdings and conclude that the trial court did not err by trying defendant under the bills of indictment issued in this case.

**[3]** Next, defendant asserts that the trial court erred by entering judgment upon defendant's convictions for first-degree murder based on indictments purportedly alleging only second-degree murder. Defendant argues that this deficiency created a fatal variance between the verdicts and the indictments and violated his Fourteenth and Fifth Amendment rights.

Defendant is correct that our case law requires conformity between a charge and a judgment. *State v. Hare*, 243 N.C. 262, 264, 90 S.E.2d 550, 552 (1955). Nevertheless, in this case no variance exists between the charges in the indictments and the judgments entered. As noted above, the indictments were sufficient to charge first-degree murder, the crime for which defendant was convicted. Accordingly, defendant's assignment of error is overruled.

**STATE v. SQUIRES**

[357 N.C. 529 (2003)]

## SENTENCING PROCEEDING

**[4]** Defendant next contends that the trial court erred in submitting the (e)(11) aggravating circumstance, that the murder was part of a course of conduct including crimes of violence against others. *See* N.C.G.S. § ·15A-2000(e)(11) (2001). Defendant relies on the theory espoused in his first assignment of error, that the sale of cocaine was improperly submitted as an underlying felony. Assuming *arguendo* that defendant's argument was correct, defendant's conviction for the felony murder of Keech would rest solely on the murder of House. In *State v. Silhan*, 302 N.C. 223, 275 S.E.2d 450 (1981), *overruled on other grounds by State v. Sanderson*, 346 N.C. 669, 488 S.E.2d 133 (1997), this Court held that "[w]hen a criminal defendant is convicted of first[-]degree murder upon a theory of felony murder, it is error to submit the underlying felony to the jury at the punishment phase of trial as one of the aggravating circumstances." *Id.* at 262, 275 S.E.2d at 478; *see also State v. Millsaps*, 356 N.C. 556, 560, 572 S.E.2d 767, 770 (2002); *State v. Cherry*, 298 N.C. 86, 113, 257 S.E.2d 551, 567-68 (1979), *cert. denied*, 446 U.S. 941, 64 L. Ed. 2d 796 (1980). Thus, if the murder of House were the only predicate felony supporting the felony murder conviction for Keech's murder, the State in this case would have been barred from having the (e)(11) aggravator submitted. However, where the evidence supports a finding of more than one underlying felony, the (e)(11) aggravating circumstance may be submitted since only one of the underlying felonies merges as an element of the first-degree murder conviction. *Cherry*, 298 N.C. at 113, 257 S.E.2d at 567-68.

As noted above, the jury in this case properly found defendant guilty of felony murder for the death of Keech based on attempted sale of cocaine. Accordingly, the murder of House could properly be used to support submission of the (e)(11) circumstance, and the trial court did not err by submitting it.

**[5]** Defendant next argues that this Court should reconsider its prior holdings that the short-form murder indictment, taken from N.C.G.S. § 15-144, is sufficient to give the trial court jurisdiction over a capital defendant. Specifically, defendant contests this Court's holding that aggravating circumstances found at the sentencing proceeding in a capital trial are used only as sentencing factors and not as elements of a greater offense. *See, e.g., State v. Golphin*, 352 N.C. 364, 395-97, 533 S.E.2d 168, 193-94 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Defendant contends that the United States Supreme Court in *Ring v. Arizona*, 536 U.S. 584, 153 L. Ed. 2d 556 (2002), held that

aggravating circumstances are elements of capital murder, a greater crime than first-degree murder; thus, to comport with Article I, Section 22 of the North Carolina Constitution, aggravating circumstances must be included in an indictment in order to give a trial court jurisdiction over a capital murder.

This Court addressed this issue in the recent case of *State v. Hunt*, 357 N.C. 257, 277-78, 582 S.E.2d 593, 606 (2003), holding that, even after *Ring*, the short-form murder indictment is both statutorily and constitutionally sufficient without the inclusion of the N.C.G.S. § 15A-2000(e) aggravating circumstances. As noted therein, the United States Supreme Court's ruling in *Ring* contains nothing requiring reconsideration of our earlier holdings that the short-form murder indictment was an appropriate charging document. *See, e.g., Braxton*, 352 N.C. at 173-75, 531 S.E.2d 436-38; *Wallace*, 351 N.C. at 503-08, 528 S.E.2d at 341-43. This assignment of error is overruled.

[6] In his next assignment of error, defendant contends that his rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated by the trial court's entry of a death sentence under an indictment failing to allege all of the elements of capital murder. Defendant acknowledges that the Court in *Ring* stopped short of deciding whether the Fourteenth Amendment required aggravating circumstances to be alleged in a criminal indictment. 536 U.S. at 597 n.4, 153 L. Ed. 2d at 569 n.4. Nonetheless, he argues that this Court should revisit its decision in *Braxton*, 352 N.C. 158, 531 S.E.2d 428, under the logic employed in *Ring*. We decline to do so.

As defendant concedes, this Court has previously considered this argument in *Braxton* and determined that "[t]he crime of first-degree murder and the accompanying maximum penalty of death . . . are encompassed within the language of the short-form murder indictment." 352 N.C. at 175, 531 S.E.2d at 437-38; *see also Wallace*, 351 N.C. at 504-08, 528 S.E.2d at 341-43. The United States Supreme Court in *Ring*, as pointed out by defendant, explicitly declined to consider the issue of the defendant's indictment. 536 U.S. at 597 n.4, 153 L. Ed. 2d at 569 n.4. This assignment of error is overruled.

[7] Defendant's next assignment of error pertains to the trial court's submission of the (e)(3) aggravating circumstance, that "defendant had been previously convicted of a felony involving the use or threat of violence to the person." N.C.G.S. § 15A-2000(e)(3). Defendant contends that this Court's interpretation of that aggravator in *State v.*

*Burke,* 343 N.C. 129, 469 S.E.2d 901, *cert. denied,* 519 U.S. 1013, 136 L. Ed. 2d 409 (1996), and in *State v. Lyons,* 343 N.C. 1, 468 S.E.2d 204, *cert. denied,* 519 U.S. 894, 136 L. Ed. 2d 167 (1996), was incorrect under the plain language of the statute. In short, defendant contends that for the (e)(3) aggravator to apply a defendant must have been convicted of the violent felony before the commission of the act for which he is currently on trial.

Assuming without deciding that defendant effectively preserved this issue for appellate review, we do not agree that the (e)(3) aggravating circumstance was improperly submitted. In *Burke,* the defendant shot a man he believed testified against him in a previous murder trial. 343 N.C. at 138, 469 S.E.2d at 904. The prior felony for which (e)(3) was submitted in that case was assault with a deadly weapon inflicting serious injury. *Id.* at 157, 469 S.E.2d at 915. As in this case the conviction for the prior felony occurred after the murder for which the defendant was being sentenced but before the defendant's conviction for the murder. *Id.* The Court in *Burke* held as follows:

> [T]here is no requirement that the conviction occur prior to the capital murder so long as the conduct giving rise to the conviction occurred prior to the events out of which the capital murder arose. The "previously convicted" language used by the legislature in N.C.G.S. § 15A-2000(e)(3) simply establishes a more reliable means of assuring that the defendant is guilty of the violent felony.

*Id.* at 159, 469 S.E.2d at 916.

In this case defendant was convicted of six qualifying violent felonies on 12 August 1999. Defendant's trial for the capital murders of House and Keech took place after that date. We decline to impose a requirement that the conviction for the prior felony precede the occurrence of the capital murder itself. Thus, under this Court's precedent, the trial court's submission of the (e)(3) aggravating circumstance was not error.

[8] Defendant next contends that the trial court improperly declined to submit to the jury as a nonstatutory mitigating circumstance that defendant had been sentenced to 105 years' imprisonment in the state of Georgia for his convictions of crimes that he had committed there. More specifically, defendant argues that fairness dictates that he be permitted to use the convictions as mitigation, just as the State is permitted to use them as aggravation to support a death sentence. We disagree.

STATE v. SQUIRES

[357 N.C. 529 (2003)]

This Court has held that a defendant's prison sentence for another crime is not relevant as a mitigating circumstance. *State v. Price*, 331 N.C. 620, 634-35, 418 S.E.2d 169, 177 (1992), *sentence vacated on other grounds*, 506 U.S. 1043, 122 L. Ed. 2d 113 (1993). In *Price*, this Court stated: "That [a] defendant is currently serving a life sentence for another unrelated crime is not a circumstance which tends to justify a sentence less than death for the capital crime for which defendant is being sentenced." *Id.* In keeping with this precedent, we hold that the trial court correctly denied defendant's request to submit the prior sentences as a mitigating circumstance. This assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises six additional issues that he concedes have previously been decided contrary to his position by this Court: (i) whether the trial court properly denied defendant's request for allocution; (ii) whether the trial court used the proper burden of persuasion for mitigating circumstances by instructing the jury that defendant had the burden to prove mitigating circumstances to the satisfaction of the jurors; (iii) whether the trial court erred by instructing jurors that they were permitted to reject mitigators on the basis that they did not have mitigating value; (iv) whether the trial court erred by instructing jurors they "may" consider mitigating circumstances; (v) whether the trial court properly instructed the jury that the death penalty may be imposed if the mitigating circumstances have equivalent weight to the aggravating circumstances; and (vi) whether the North Carolina death penalty statute is vague, overbroad, and unconstitutional in that the death sentence is a cruel and unusual punishment imposed in an arbitrary and discriminatory manner.

Defendant raises these issues for purposes of urging this Court to reexamine its prior holdings. We have considered .defendant's arguments on these issues and conclude that defendant has demonstrated no compelling reason for us to depart from our prior holdings. We thus overrule these assignments of error.

## PROPORTIONALITY

[9] Finally, this Court exclusively has the statutory duty in capital cases, pursuant to N.C.G.S. § 15A-2000(d)(2), to review the record and determine: (i) whether the record supports the jury's findings of the aggravating circumstances upon which the court based its death

sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *State v. McCollum*, 334 N.C. 208, 239, 433 S.E.2d 144, 161 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

After a thorough review of the transcript, record on appeal, briefs, and oral arguments of counsel, we conclude that the jury's findings of the three distinct aggravating circumstances submitted were supported by the evidence. We also conclude that nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finally, we must consider whether the imposition of the death penalty in defendant's case is proportionate to other cases in which the death penalty has been affirmed, considering both the crime and the defendant. *State v. Robinson*, 336 N.C. 78, 133, 443 S.E.2d 306, 334 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995). The purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). Our consideration is limited to those cases that are roughly similar as to the crime and the defendant, but we are not bound to cite every case used for comparison. *State v. Syriani*, 333 N.C. 350, 400, 428 S.E.2d 118, 146, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994).

In the case at bar, defendant was convicted of two first-degree murders—one on the basis of premeditation and deliberation and under the felony murder rule, for which he did not receive the death penalty, and one solely under the felony murder rule, for which he did receive the death penalty. As to the Keech murder, for which defendant received a sentence of death, the jury found all of the aggravating circumstances submitted: (i) that defendant had been previously convicted of six felonies involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3); (ii) that the capital felony was

committed for the purpose of avoiding or preventing a lawful arrest, N.C.G.S. § 15A-2000(e)(4); and (iii) that the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11).

The trial court submitted one statutory mitigating circumstance for the jury's consideration, the catchall mitigating circumstance that there existed any other circumstance arising from the evidence which the jury deemed to have mitigating value, N.C.G.S. § 15A-2000(f)(9). The jury did not find that mitigating circumstance to exist. The trial court also submitted four nonstatutory mitigating circumstances; the jury found one of these circumstances to exist and to have mitigating value.

In our proportionality analysis we compare this case to those cases in which this Court has determined the sentence of death to be disproportionate. This Court has determined the death sentence to be disproportionate on eight occasions. *State v. Kemmerlin*, 356 N.C. 446, 573 S.E.2d 870 (2002); *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). This case is not substantially similar to any of the cases in which this Court has found that the death sentence was disproportionate.

We also consider cases in which this Court has found the death penalty to be proportionate. Defendant in this case murdered House during a drug deal and then shot Keech in the head and chest. Defendant also has a history that includes prior convictions for shootings and violent crimes. Furthermore, this Court has deemed the (e)(3) and (e)(11) aggravating circumstances, standing alone, to be sufficient to sustain a sentence of death. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). Viewed in this light, the present case is more analogous to cases in which we have found the sentence of death proportionate than to those cases in which we have found the sentence disproportionate or to those cases in which juries have consistently returned recommendations of life imprisonment.

Defendant received a fair trial and capital sentencing proceeding, free from prejudicial error; and the death sentence in this case is not disproportionate. Accordingly, the judgments of the trial court are left undisturbed.

NO ERROR.