STATE OF NORTH CAROLINA v. RONALD LEE POINDEXTER a/k/a RONALD PUGH

No. 563A99

(Filed 4 May 2001)

## Jury— capital sentencing—alternate juror—substituted during deliberations—error

The trial court erred in a capital first-degree murder prosecution by denying defendant's motion for a mistrial under N.C.G.S. § 15A-1061 based on the post-verdict removal of a juror for juror misconduct committed during the guilt-innocence phase of deliberations and the substitution of an alternate juror for the sentencing proceeding, because: (1) defendant has a right under the North Carolina Constitution to trial by a jury composed of twelve qualified jurors; and (2) the dismissed juror's misconduct during jury deliberations resulted in a guilty verdict by a jury composed of less than twelve qualified jurors. N.C. Const. art. I, § 24.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Greeson, J., on 30 November 1999 in Superior Court, Randolph County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 13 March 2001.

*Roy A. Cooper, Attorney General, by Ellen B. Scouten, Special Deputy Attorney General, for the State.*

*William F.W. Massengale and Marilyn G. Ozer for defendant-appellant.*

PARKER, Justice.

Defendant was indicted on 23 February 1998 for the first-degree murder of Wanda Luther Coltrane. Defendant was tried capitally and

found guilty of first-degree murder on the basis of premeditation and deliberation and under the felony-murder rule. Following a capital sentencing proceeding, the jury recommended a sentence of death for the murder; and the trial court entered judgment accordingly. For the reasons discussed herein, we conclude that defendant is entitled to a new trial.

This case appears to present a factual situation of first impression. In the afternoon of 18 November 1999, the jury completed its deliberations and returned a verdict of guilty. After receiving the verdict the trial court instructed the jury to return on Monday, 29 November 1999, and recessed the trial until that date. Within minutes after the jurors were dismissed, juror two, who was the foreperson, approached the courtroom clerk and said he needed to speak with someone about a rumor that "defendant's family was going to get whoever they had to get." The clerk informed the trial court about her conversation with the foreperson; and the trial court detained the foreperson and jurors one and six, who were also still at the courthouse. The trial court then questioned these three jurors on the record in the presence of the court reporter, the clerk, the prosecutors, and defense counsel. The foreperson stated the following:

> We were in the jury room, and one of the jurors spoke up and said that he lives in the approximate area as the family and that the word in the street in that—I guess what he said was the jurors would be dealt with or got or taken care of, and there was some concerns.

The foreperson indicated that this comment was made during deliberations and that juror eleven was the person who made the statement. The foreperson then expressed his concern that if he did not report the information and something happened to another member of the jury, he would have it on his conscience the rest of his life.

Upon questioning, jurors six and one testified to the effect that juror eleven had said during deliberations that the word "in the area" was for jurors or witnesses to be forewarned of possible harm from defendant's family if defendant was found guilty.

After questioning these three jurors, the trial court sent them home with instructions to return the next morning. The trial court also directed the clerk to contact the remaining jurors and instruct

them to return the next morning. The trial court then expressed to the prosecutors and defense counsel its intention to remove juror eleven, stating:

> I think the best thing for [juror eleven], I've got to excuse him. I don't have any problem with that. I don't have a choice with him. We've got to excuse him. But what he did, you know, was—whoo—

The next morning, before the trial court began questioning any jurors, defense counsel requested that the trial court refrain from asking the jurors about the effect, if any, of juror eleven's misconduct on their verdict. The trial court denied defense counsel's request. When questioned, each juror acknowledged that a statement had been made which in some manner touched on their safety and well-being. Nine of the jurors specifically corroborated the foreperson's statement that juror eleven had conveyed to the jurors a suggestion that they be aware or careful on account of defendant's family.

Juror eleven told the court that he received a telephone call from a friend who wanted him to "be aware of these—of how this was down there, not only the family but the whole people in general." Juror eleven stated that he told the jurors "that I had heard to be aware that—keep your eyes open, that—Well, it was just to make me aware that there could be. You know, there was no threats, no nothing of any kind." Juror eleven acknowledged that the purpose of the call had been to warn him. Juror eleven and juror six also informed the trial court that the jurors briefly discussed whether to tell the trial court about the telephone call that juror eleven had received.

The trial court subsequently removed juror eleven for his misconduct, explaining:

> It was highly improper for you not to report [the telephone call] to me. It was highly improper for you to bring [the telephone call] to the other jurors. Since you obviously—I mean I'm not going to punish you for doing your civic duty and being on the jury. But what you did was improper. I don't feel like that I can let you continue on with this case, so I'm going to dismiss you from the case with my thanks for your service up to this point. And I'm going to release you at this time.

Defendant then filed a motion for mistrial pursuant to N.C.G.S. § 15A-1061 on the basis that the jury had heard extraneous informa-

**STATE v. POINDEXTER**

[353 N.C. 440 (2001)]

tion in violation of defendant's constitutional right to confront the witnesses against him. After the trial court denied defendant's motion for mistrial, it inquired of the prosecutors and defense counsel as to their wishes regarding the jury in the capital sentencing proceeding. The prosecutor expressed a willingness to replace juror eleven with an alternate juror for the capital sentencing proceeding. However, defense counsel argued that the trial court had erroneously denied defendant's motion for mistrial and the trial court, therefore, would err by continuing to the sentencing proceeding with either an alternate juror or with a newly empaneled sentencing jury. The trial court ultimately seated an alternate juror for the capital sentencing proceeding.

Defendant contends that the post-verdict removal of juror eleven for juror misconduct committed during the guilt-innocence phase deliberations violated his right under the North Carolina Constitution to trial by a jury composed of twelve qualified jurors. We agree.

Article I, Section 24 of the North Carolina Constitution, which guarantees the right to trial by jury, contemplates no more or no less than a jury of twelve persons. *See State v. Bindyke*, 288 N.C. 608, 623, 220 S.E.2d 521, 531 (1975) (holding that an alternate's presence in the jury room for a brief period at the beginning of jury deliberations was a violation of this constitutional right); *State v. Hudson*, 280 N.C. 74, 79, 185 S.E.2d 189, 192 (1971) (holding that notwithstanding defendant's consent, the verdict was a nullity where the trial court proceeded to verdict with a jury of eleven). In *State v. Bunning*, 346 N.C. 253, 256, 485 S.E.2d 290, 292 (1997), this Court held that the constitutional requirement of trial by a jury of twelve was violated by substitution of an alternate juror for an incapacitated juror after jury deliberations had started, resulting in a verdict rendered by eleven jurors plus two jurors who each participated partially. Similarly, we hold that the requirement of trial by a jury of twelve is violated where, as here, a juror becomes disqualified during deliberations as a result of juror misconduct.

The State argues that no evidence supports that juror eleven was disqualified during the guilt-innocence phase and that juror eleven was properly removed only for the sentencing proceeding. This position is untenable. First, we note that cases cited by the State are distinguishable. In *State v. Allen*, 323 N.C. 208, 223, 372 S.E.2d 855, 864 (1988), *sentence vacated on other grounds*, 494 U.S. 1021,

108 L. Ed. 2d 601 (1990), the juror who overheard co-workers talking about the case was removed and replaced with an alternate before deliberations began as permitted by N.C.G.S. § 15A-1215. The other cases, *State v. Nelson*, 298 N.C. 573, 260 S.E.2d 629 (1979), *cert. denied*, 446 U.S. 929, 64 L. Ed. 2d 282 (1980), and *State v. McLaughlin*, 323 N.C. 68, 372 S.E.2d 49 (1988), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), did not involve juror misconduct or anything occurring during deliberations.

In the present case, within an hour after the jury returned its guilty verdict, the trial court determined that it must remove juror eleven; and the basis was clearly juror misconduct during deliberations. Under these facts, if this juror was not qualified to continue serving during the sentencing proceeding, then he became disqualified during the guilt-innocence deliberations. The recordation of the verdict and dismissal of the jury for the recess until the capital sentencing proceeding did not absolve the misfeasant juror's misconduct and render him qualified for purposes of the guilt-innocence phase deliberations. Moreover, the gravity of this juror misconduct was compounded by some of the jurors collectively deciding, in direct contravention of the trial court's instructions, not to tell the trial court about this report of alleged potential harm. Thus, juror eleven's misconduct during jury deliberations resulted in a guilty verdict by a jury composed of less than twelve qualified jurors.

A trial by a jury that is improperly constituted is so fundamentally flawed that the verdict cannot stand. *Bunning*, 346 N.C. at 257, 485 S.E.2d at 292. In *Bindyke*, 288 N.C. at 627, 220 S.E.2d at 533, this Court held that a violation of a defendant's constitutional right to have the verdict determined by twelve jurors constituted error *per se*. *See also State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985). Accordingly, this case is not subject to harmless error analysis; and defendant is entitled to a new trial.

NEW TRIAL.