STATE OF NORTH CAROLINA v. RONALD LEE POINDEXTER,
A/K/A RONALD LEE PUGH, A/K/A SAM PUGH

No. 563A99-2

(Filed 4 March 2005)

**1. Constitutional Law— effective assistance of counsel—failure to present diminished capacity defense—trial strategy**

Although the trial court properly vacated defendant's death sentence and ordered a new capital sentencing hearing based on ineffective assistance of defendant's trial counsel during his 2002 sentencing proceeding for first-degree murder, defendant did not receive ineffective assistance of counsel based on his attorneys' failure to present a diminished capacity defense during the guilt-innocence phase of defendant's 2002 capital trial, because: (1) diminished capacity is a means of negating the ability to form the specific intent to kill required for a first-degree murder conviction on the basis of premeditation and deliberation and as such is inconsistent with defendant's claim of innocence; and (2) although defense counsel pursued a defense of insanity, rather than insanity and diminished capacity, decisions concerning which defenses to pursue are matters of trial strategy and are not generally second-guessed by our Supreme Court.

**2. Criminal Law— motion for appropriate relief—adjudicating defendant mentally retarded—jurisdiction**

The superior court did not err by concluding that it lacked jurisdiction in a first-degree murder case to conduct an evidentiary hearing with respect to defendant's motion for appropriate relief (MAR) to adjudicate defendant mentally retarded under N.C.G.S. § 15A-2005, because: (1) the General Assembly did not intend for superior courts to make post-conviction determinations of mental retardation outside the confines of N.C.G.S. § 15A-2006; and (2) the one-year window for post-conviction determinations of mental retardation under N.C.G.S. § 15A-2006 has expired, and N.C.G.S. § 15A-2005 allows only for pretrial and sentencing determinations of mental retardation.

Justice NEWBY did not participate in the consideration or decision of this case.

On certification of an order entered 18 November 2003 by Judge Clarence E. Horton, Jr. in Superior Court, Randolph County, vacating

defendant's death sentence and ordering a new sentencing hearing, pursuant to this Court's 22 May 2003 order remanding defendant's motion for appropriate relief (MAR) to the trial court. On 28 May 2004, this Court allowed defendant's motion for supplemental briefing and oral argument on issues related to the MAR and resulting order. Heard in the Supreme Court 8 November 2004.

*Roy Cooper, Attorney General, by Ellen B. Scouten and Valérie B. Spalding, Special Deputy Attorneys General, for the State.*

*Staples Hughes, Appellate Defender, by Janet Moore, Assistant Appellate Defender, for defendant-appellant.*

BRADY, Justice.

This Court must address two dispositive issues: (1) whether the failure of defendant's attorneys to present a diminished capacity defense during the guilt-innocence phase of defendant's 2002 capital trial for first-degree murder constituted ineffective assistance of counsel, and (2) whether the superior court lacked jurisdiction to conduct the evidentiary hearing with respect to defendant's motion for appropriate relief (MAR) to adjudicate defendant mentally retarded under N.C.G.S. § 15A-2005. We determine that defendant's 2002 trial counsel was not constitutionally ineffective and that the procedures established in N.C.G.S. § 15A-2005 are the only avenues by which a defendant may be adjudicated mentally retarded by a superior court. Therefore, determinations of mental retardation must be made either initially by the superior court in a pretrial proceeding or during a subsequent sentencing proceeding by a jury.

## PROCEDURAL HISTORY

On 17 December 1997, defendant Ronald Lee Poindexter, also known as Ronald Lee Pugh and Sam Pugh, drove to his niece's home where, unbeknownst to defendant, the Randolph County Sheriff's Department was investigating a 911 emergency telephone call. As defendant exited the car, the officers present noted that defendant was covered in blood and that a woman's partially-clothed body was slouched in the front seat of the vehicle. The law enforcement officers determined that the woman, whom defendant identified as Wanda Coltrane, was deceased. An autopsy later revealed that Ms. Coltrane died from multiple knife wounds to the neck inflicted by a serrated blade.

Defendant was indicted for the first-degree murder of Wanda Coltrane by a Randolph County grand jury on 23 February 1998. On 18 November 1999, a Randolph County jury found defendant guilty of first-degree murder based on malice, premeditation and deliberation and under the felony murder rule, with the underlying felony being attempted rape. The jury recommended a sentence of death and, on 30 November 1999, the Honorable Howard R. Greeson, Jr. entered judgment accordingly. Defendant entered a direct appeal and, on 4 May 2001, this Court ordered that defendant receive a new trial due to juror misconduct during the guilt-innocence phase. *State v. Poindexter*, 353 N.C. 440, 444, 545 S.E.2d 414, 416 (2001).

Defendant was retried during the 14 January 2002 Criminal Session of Randolph County Superior Court and was represented by the same attorneys as during his 1999 trial. On 24 January 2002, a second jury found defendant guilty of the first-degree murder of Wanda Coltrane based on malice, premeditation and deliberation and under the felony murder rule. On 29 January 2002, the jury recommended that defendant be sentenced to death, and Judge Greeson again imposed a capital sentence. Defendant immediately filed notice of appeal and received new appointed appellate counsel. On 21 May 2002, this Court stayed defendant's execution until his second direct appeal was resolved.

On 28 April 2003, while defendant's second direct appeal was still pending, defendant filed a MAR with this Court pursuant to N.C.G.S. § 15A-1418. On 22 May 2003, this Court allowed defendant's MAR for the limited purpose of remanding the motion to the Randolph County Superior Court for a determination of whether "[i]neffective assistance of trial counsel requires that defendant receive a new trial or, in the alternative, that his death sentence be vacated and the case remanded for the [superior] court either to impose a sentence of life imprisonment without parole, or to hold a new sentencing hearing." Further, this Court directed the superior court to determine whether "[t]he trial court lacked jurisdiction to impose a death sentence upon [defendant], a person with mental retardation . . . ." *State v. Poindexter*, 357 N.C. 248, 248, 581 S.E.2d 762, 762 (2003). In allowing defendant's motion, this Court ordered that the superior court transmit its order from the evidentiary hearing to "this Court so that it may proceed with the [second direct] appeal or enter such other appropriate order as required." *Id.*

An evidentiary hearing with respect to defendant's MAR was held during the 3 November 2003 session of Randolph County Superior

Court. On 18 November 2003, the court entered an order denying both defendant's request to be adjudicated mentally retarded and to receive a new trial on the grounds of ineffective assistance of counsel during the guilt-innocence phase of his second capital trial. However, the court's order did vacate defendant's death sentence and order a new capital sentencing hearing due to ineffective assistance of defendant's trial counsel during his 2002 sentencing proceeding. Consistent with this Court's 22 May 2003 order allowing defendant's MAR, we now review the trial court's order resolving the issues raised by defendant in his MAR.

As a preliminary matter, we note that the State does not challenge the trial court's conclusion that defendant received ineffective assistance of counsel during the 2002 sentencing proceeding. Accordingly, the two issues before this Court are: (1) whether defendant's trial counsel rendered ineffective assistance of counsel during the guilt-innocence phase of defendant's 2002 trial, and (2) whether the superior court erred in concluding that it lacked jurisdiction during a post-conviction MAR evidentiary hearing to adjudicate defendant mentally retarded. In reviewing the superior court's order, we are mindful that

> [f]indings of fact made by the trial court pursuant to hearings on motions for appropriate relief are "binding upon the [defendant] if they were supported by evidence." *State v. Stevens*, 305 N.C. 712, 719-20, 291 S.E.2d 585, 591 (1982). "Our inquiry therefore, is to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *Stevens*, 305 [N.C.] at 720, 291 S.E.2d at 591; *see also* [] *State v. Morganherring*, 350 N.C. 701, 714, 517 S.E.2d 622, 630 (1999), *cert. denied*, 529 U.S. 1024, 146 L. Ed. 2d 322 (2000).

*State v. Matthews*, 358 N.C. 102, 105-06, 591 S.E.2d 535, 538 (2004).

## INEFFECTIVE ASSISTANCE OF COUNSEL

[1] We find no error in the superior court's 18 November 2003 determination that the failure of defendant's 2002 trial counsel to present a diminished capacity defense during the guilt-innocence phase of defendant's trial does not constitute constitutionally ineffective assistance of counsel. To establish ineffective assistance of counsel a defendant must first show that his defense counsel's

performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). Next, a defendant must establish that this deficiency prejudiced his defense. *Id.* "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Wiggins v. Smith,* 539 U.S. 510, 534, 156 L. Ed. 2d 471, 493 (2003) (quoting *Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698).

The superior court's findings of fact establish that in preparation for the 1999 trial, defense counsel retained Dr. Nathan Strahl, a licensed psychiatrist, to perform a "mental status examination" of defendant. Dr. Strahl was specifically retained to assess defendant's limited intelligence and cocaine abuse as these factors related to a potential diminished capacity defense. However, Dr. Strahl concluded that defendant's substance abuse and intelligence quotient did not meet the legal definition of diminished capacity; thus, Dr. Strahl was not called to testify until the sentencing phase of the 1999 trial. Similarly, Dr. Strahl was not called as a witness during the guilt-innocence phase of defendant's 2002 capital trial nor did he testify during the sentencing phase.

The superior court also found that defendant did not testify during his 1999 trial. However, during defendant's 2002 trial, he "elected to testify in support of a defense that unknown assailants killed Ms. Coltrane, a defense inconsistent with a diminished capacity defense." Defendant now claims that the failure of his trial counsel to assert a diminished capacity defense during the guilt-innocence phase of his 2002 trial amounts to ineffective assistance of counsel because the defense of diminished capacity does not "undermine[] [defendant's] claim of innocence."

However, defendant's argument ignores the reality that "[d]iminished capacity is a means of negating the 'ability to form the specific intent to kill required for a first-degree murder conviction on the basis of premeditation and deliberation,'" *State v. Roache,* 358 N.C. 243, 282, 595 S.E.2d 381, 407 (2004) (quoting *State v. Page,* 346 N.C. 689, 698, 488 S.E.2d 225, 231 (1997), *cert. denied,* 522 U.S. 1056, 139 L. Ed. 2d 651 (1998)), and as such is clearly inconsistent with a claim of innocence.

Furthermore, in addressing whether trial counsel was constitutionally ineffective because a defense of insanity, rather than insanity

and diminished capacity, was pursued at trial, this Court has indicated that "[d]ecisions concerning which defenses to pursue are matters of trial strategy and are not generally second-guessed by this Court." *State v. Prevatte*, 356 N.C. 178, 236, 570 S.E.2d 440, 472 (2002), *cert. denied*, 538 U.S. 986, 155 L. Ed. 2d 681 (2003). Because we find that the superior court's findings of fact are clearly supported by the evidence presented and those findings of fact adequately support the superior court's conclusion of law that defendant's trial attorneys were not constitutionally ineffective during the guilt-innocence phase of the trial, we decline to second-guess the strategic reasons of defense counsel for not pursuing a diminished capacity defense in defendant's second trial. Accordingly, we find no error.

## SUBJECT MATTER JURISDICTION OF SUPERIOR COURT TO ADJUDICATE DEFENDANT MENTALLY RETARDED

**[2]** Similarly, we find no error in the superior court's conclusion that it lacked jurisdiction to adjudicate defendant mentally retarded. In *Atkins v. Virginia*, 536 U.S. 304, 321, 153 L. Ed. 2d 335, 350 (2002), the United States Supreme Court held that executing mentally retarded individuals violates the Eighth Amendment to the United States Constitution prohibition against excessive punishment. However, that Court also stated:

> To the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded. In this case, for instance, the Commonwealth of Virginia disputes that Atkins suffers from mental retardation. *Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus.* As was our approach in *Ford v. Wainwright*, 477 U.S. 399, [91 L. Ed. 2d 335] (1986), with regard to insanity, "*we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.*"

*Id.* at 317, 153 L. Ed. 2d at 347-48 (emphasis added) (footnote and citations omitted). Thus, the United States Supreme Court left the implementation of *Atkins* entirely to state legislatures.

The North Carolina statute prohibiting execution of mentally retarded individuals and defining mental retardation for that purpose, codified at N.C.G.S. § 15A-2005, was enacted in 2001 and

thus antedates the *Atkins* decision. However, it is noteworthy that the legal definition of mental retardation set forth in N.C.G.S. § 15A-2005(a) was referenced by the United States Supreme Court when it handed down its holding in *Atkins*. *Id.* at 308 n.3, 314-15 & 317 n.22, 153 L. Ed. 2d at 342 n.3, 346 & 348 n.22.

With respect to mental retardation, our General Assembly has stated that "no defendant who is mentally retarded shall be sentenced to death." N.C.G.S. § 15A-2005(b) (2003). The General Assembly further clarified that:

(a) (1) The following definitions apply in this section:

a. Mentally retarded.—Significantly subaverage general intellectual functioning, existing concurrently with significant limitations in adaptive functioning, both of which were manifested before the age of 18.

b. Significant limitations in adaptive functioning.—Significant limitations in two or more of the following adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure skills and work skills.

c. Significantly subaverage general intellectual functioning.—An intelligence quotient of 70 or below.

(2) The defendant has the burden of proving significantly subaverage general intellectual functioning, significant limitations in adaptive functioning, and that mental retardation was manifested before the age of 18. An intelligence quotient of 70 or below on an individually administered, scientifically recognized standardized intelligence quotient test administered by a licensed psychiatrist or psychologist is evidence of significantly subaverage general intellectual functioning; however, it is not sufficient, without evidence of significant limitations in adaptive functioning and without evidence of manifestation before the age of 18, to establish that the defendant is mentally retarded.

N.C.G.S. § 15A-2005(a) (2003).

Procedurally, under the statute, a defendant may seek a pretrial determination of mental retardation. *Id.* § 15A-2005(c) (2003). Should the State consent to such a hearing, a defendant must carry "the burden of production and persuasion to demonstrate mental retardation

by clear and convincing evidence." *Id.* If the trial court determines that a defendant is mentally retarded, the case may only proceed non-capitally. *Id.* However, if the trial court determines that a defendant is not mentally retarded, the defendant may still seek a jury determination of mental retardation during the sentencing hearing. N.C.G.S. § 15A-2005(e) (2003). Thus, under N.C.G.S. § 15A-2005, determinations of mental retardation must be made either initially by the superior court in a pretrial proceeding, or subsequently during a sentencing proceeding by the jury.

In the case *sub judice*, defendant argues that N.C.G.S. §§ 15A-1411 to 1422, which govern resolution of MAR proceedings, empowered the superior court to determine that he is mentally retarded. Defendant further argues that N.C.G.S. § 15A-2005 is relevant to MAR proceedings only to the extent that it provides a standard by which a superior court judge must determine whether a particular defendant is mentally retarded and thereby not subject to imposition of the death penalty under North Carolina law.

Critical to our determination, we note that N.C.G.S. § 15A-2006 (2001), which expired 1 October 2002 pursuant to Act of July 25, 2001, ch. 346, sec. 4, 2001 N.C. Sess. Laws 1038, 1041, specifically provided a window of opportunity from 1 October 2001 to 1 October 2002 for post-conviction determinations of mental retardation for those defendants who had already been sentenced to death and were therefore unable to avail themselves of the procedures established in N.C.G.S. § 15A-2005. Therefore, N.C.G.S. § 15A-2006 established an interim procedure for post-conviction determinations of mental retardation subject to the MAR procedures established in N.C.G.S. § 15A-1420. *See State v. Anderson*, 355 N.C. 136, 149-50, 558 S.E.2d 87, 96 (2002) (applying N.C.G.S. § 15A-2006). N.C.G.S. § 15A-2006 stated:

> In cases in which the defendant has been convicted of first-degree murder, sentenced to death, and is in custody awaiting imposition of the death penalty, the following procedures apply:
>
> (1) *Notwithstanding any other provision or time limitation contained in Article 89 of Chapter 15A, a defendant may seek appropriate relief from the defendant's death sentence upon the ground that the defendant was mentally retarded,* as defined in G.S. 15A-2005(a), at the time of the commission of the capital crime.

(2) *A motion seeking appropriate relief from a death sentence on the ground that the defendant is mentally retarded,* shall be filed:

   a. On or before January 31, 2002, if the defendant's conviction and sentence of death were entered prior to October 1, 2001.

   b. Within 120 days of the imposition of a sentence of death, if the defendant's trial was in progress on October 1, 2001. For purposes of this section, a trial is considered to be in progress if the process of jury selection has begun.

(3) *The motion, seeking relief from a death sentence upon the ground that the defendant was mentally retarded, shall comply with the provisions of G.S. 15A-1420. The procedures and hearing on the motion shall follow and comply with G.S. 15A-1420.*

N.C.G.S. § 15A-2006 (2001) (emphasis added).

Both parties concede that N.C.G.S. § 15A-2006 does not apply in this case; however, N.C.G.S. § 15A-2006 is instructive because it clearly establishes that the drafters of N.C.G.S. §§ 15A-2005 and 15A-2006 considered adjudication of mental retardation through motions for appropriate relief. Although N.C.G.S. § 15A-2006 specifically allows adjudication of mental retardation via motions for appropriate relief, such provisions are conspicuously absent from N.C.G.S. § 15A-2005. This absence necessitates the conclusion that the General Assembly did not intend for superior courts to make post-conviction determinations of mental retardation outside the confines of N.C.G.S. § 15A-2006.

Thus, we conclude that N.C.G.S. § 15A-1417 of the Criminal Procedure Act, which was enacted in 1977 and allows a trial court to fashion "any other appropriate relief," must be read *in pari materia* with the more recently enacted N.C.G.S. §§ 15A-2005 and 15A-2006 of the Criminal Procedure Act. Therefore, because the one-year window for post-conviction determinations of mental retardation under N.C.G.S. § 15A-2006 has expired and because N.C.G.S. § 15A-2005 allows only for pretrial and sentencing determinations of mental retardation, superior courts are without jurisdiction to adjudicate criminal defendants mentally retarded via a motion for appropriate relief proceeding. Accordingly, we find no error in the superior

ASSOCIATED INDUS. CONTR'RS, INC. v. FLEMING ENG'G, INC.

[359 N.C. 296 (2005)]

court's order and note that defendant will have the opportunity to be fully heard on the issue of mental retardation in his upcoming resentencing proceeding.

For the reasons stated herein, we affirm the order of the superior court vacating defendant's death sentence and ordering a new capital sentencing hearing. We further affirm the order of the superior court which denied defendant's request for a new trial and denied defendant's request that the superior court adjudicate him mentally retarded.

Inasmuch as this Court has affirmed the trial court's resolution of defendant's MAR, this Court cannot proceed further with defendant's direct appeal until defendant is resentenced and the appropriate appellate jurisdiction is established.

AFFIRMED;    REMANDED    FOR    NEW    SENTENCING PROCEEDING.

Justice NEWBY did not participate in the consideration or decision of this case.