STATE OF NORTH CAROLINA v. MARIO RODRIQUESO WILSON, Defendant

No. COA09-438

(Filed 16 March 2010)

**Constitutional Law— effective assistance of counsel—no reasonable probability of different outcome**

Even assuming *arguendo* that the performance of defendant's trial counsel was deficient, defendant has not demonstrated that there was a reasonable probability that the result of the trial would have been different but for his trial counsel's actions given the overwhelming evidence supporting defendant's guilt as to the two charged offenses of attempted robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury.

Appeal by defendant from judgments entered 5 November 2008 by Judge Calvin E. Murphy in Superior Court, Mecklenburg County. Heard in the Court of Appeals 30 September 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kimberley A. D'Arruda, for the State.*

*Parish, Cooke & Condlin, by James R. Parish, for defendant-appellant.*

STROUD, Judge.

Mario Rodriqueso Wilson ("defendant") was convicted of attempted robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. Defendant appeals, arguing that he did not receive effective assistance of counsel. For the following reasons, we find no prejudicial error.

I. Background

The State's evidence tended to show that on 31 December 2006 around 8:00 or 8:30 p.m., brothers Joseph Patrick Driver ("Joseph") and James Andrew Driver ("James") drove to a check cashing place on Central Avenue in Charlotte, North Carolina to pick up $200 wired from Western Union for their roommate Randie Greenhough. The wired money was put in Joseph's name. Joseph parked his car in a parking lot adjacent to the check cashing place and went in, while James waited in the car. As Joseph walked back to the car, defendant

confronted him with a gun, pointed it at his chest, and demanded money. Joseph reached his car and yelled for help. James got out of the car, and defendant pointed the gun back and forth between Joseph and James. Joseph grabbed defendant's arm and a struggle ensued. Joseph pushed defendant's arm up, but defendant turned his wrist and shot Joseph twice. One shot entered his chest, with the bullet lodging in his pelvis; the other bullet shattered his femur. James then joined in the struggle and defendant, Joseph, and James fell to the ground. In an attempt to disarm defendant, James bit defendant's finger. Defendant let go of the gun, and James grabbed the gun and hit defendant in the face with it. Defendant then tried to get the gun back from James but was unsuccessful and ran away. When Charlotte-Mecklenburg police officers arrived at the scene, they found a cell phone and a handgun lying on the ground in the parking lot.

As a result of his wounds, Joseph was unconscious for seven days and hospitalized for a total of thirty-two days. He had several surgeries, including chest surgery to insert lung tubes, exploratory surgery in his stomach, a tracheotomy, and surgery to repair his leg by insertion of a rod from his knee to his hip. Joseph admitted to trying marijuana, cocaine and heroin, but he was not using or looking to buy any drugs on 31 December 2006.

Thomas Ledford, a detective with Charlotte-Mecklenburg Police Department's armed robbery unit, testified that he obtained a court order to get the subscriber records of the cell phone found at the crime scene and determined that its registered owner was Calvin Robinson of Shelby, North Carolina. Calvin Robinson told Detective Ledford that his son, Orlando Robinson had the phone. Following his conversation with Calvin Robinson, Detective Ledford then obtained a photo of defendant from the Cleveland County Sheriff's Office, showed that photo of defendant to Calvin Robinson, made a photographic lineup containing defendant's picture, and showed it to James. James identified defendant as the man who shot his brother. At trial, James admitted that he had a drug addiction to heroin and that he had been using heroin the morning of 31 December 2006. Detective Ledford interviewed defendant after his arrest, and defendant never indicated that on 31 December 2006 defendant had planned to sell drugs to Joseph or that he had met Joseph at a convenience store prior to the confrontation. Instead, defendant stated that he planned to rob Joseph.

Defendant, testifying in his own defense, stated that on 31 December 2006 he rode with Steven Bess and Orlando Robinson to

Charlotte from Shelby to sell some powder cocaine to a girl that Mr. Bess knew. They were to meet her at a convenience store in Charlotte. Defendant met with the girl at the convenience store, but she refused to buy the drugs. While he was in the convenience store, defendant first saw Joseph Driver. Defendant testified that he stepped out of the store and Joseph approached defendant and asked if defendant had any drugs to sell. Defendant agreed to sell Joseph some drugs but Joseph said that he did not have any money on him and asked defendant to meet him at the check cashing place down the street so he could get some money. Mr. Bess drove to "a seafood restaurant" next to the check cashing place on Central Avenue to meet Joseph. Mr. Bess gave defendant a gun, and defendant had Mr. Robinson's cell phone. Defendant stated he met Joseph behind the seafood restaurant by a dumpster. Defendant testified that he had the drugs in his hand and showed the drugs to Joseph, but Joseph did not appear to have any money in his hand. Defendant then stated that Joseph grabbed at the drugs and a struggle ensued. Defendant went for his gun, which was tucked into the front of his pants, and defendant and Joseph fell to the ground. Defendant stated that Joseph was on top of him and the gun fired, but defendant did not know if he or Joseph had pulled the trigger. Defendant stated that the drugs and cell phone dropped to the ground. Another male came to Joseph's aid and was able to take the gun away from defendant and hit defendant with it. Defendant then got up and ran. Defendant went back to the convenience store and eventually found Mr. Bess and Mr. Robinson, and they returned to Shelby. Defendant stated that it was not his intention to rob Joseph but "to sell the drugs and go on about my business."

On 13 October 2008, defendant was indicted for attempted robbery with a dangerous weapon and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was tried on these charges at the 3 November 2008 Criminal Session of Superior Court, Mecklenburg County. On 5 November 2008, the jury found defendant guilty of attempted robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. The trial court then sentenced defendant to 51 to 71 months imprisonment for the attempted robbery with a dangerous weapon and a consecutive term of 20 to 33 months for the assault with a deadly weapon inflicting serious injury. Defendant was also ordered to pay court costs, a fine of $100 and restitution to Joseph Driver in the amount of $750. Defendant gave oral notice of appeal at trial.

## II. Ineffective Assistance of Counsel

Defendant contends that because of his trial counsel's conduct, he was denied effective assistance of counsel.

> To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test. First, he must show that counsel's performance fell below an objective standard of reasonableness. Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error.

*State v. Martin,* —— N.C. App. ——, ——, 671 S.E.2d 53, 56 (2009) (quoting *State v. Blakeney,* 352 N.C. 287, 307-08, 531 S.E.2d 799, 814-15 (2000) (citations omitted), *cert. denied,* 531 U.S. 1117, 148 L. Ed. 2d 780 (2001)).

Our Supreme Court has held that, "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell,* 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985). "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Poindexter,* 359 N.C. 287, 291, 608 S.E.2d 761, 764 (2005) (quoting *Wiggins v. Smith,* 539 U.S. 510, 534, 156 L. Ed. 2d 471, 493 (2003))

"In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal." *State v. Stroud,* 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001), *cert. denied,* 356 N.C. 623, 575 S.E.2d 758 (2002). However, ineffective assistance of counsel "claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair,* 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied,* 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). "Accordingly, should the reviewing court determine that [ineffective assistance of counsel] claims have been prematurely asserted on direct appeal, it shall dismiss those claims

without prejudice to the defendant's right to reassert them during a subsequent [motion for appropriate relief] proceeding." *Id.* at 167, 557 S.E.2d at 525.

Defendant presents three instances of conduct by his trial counsel that he argues denied him his right to effective assistance of counsel: (1) on cross-examination of Detective Angela Caroway, defendant's trial counsel brought out the fact to the jury that defendant turned himself in for unrelated robbery charges and was in custody on those charges when Detective Caroway arrived to interview defendant in Shelby when these facts could not have been brought out before the jury by the State; (2) defendant's trial counsel failed to impeach State's witness Randie Greenhough with her prior convictions of assault, disorderly conduct or attempted robbery; and (3) defendant's trial counsel was unable to introduce defense exhibit 6, which is a medical record of Joseph which noted a "polysubstance abuse history[,]" due to defense counsel's lack of preparation, consisting of not having any witness available through whom the medical record could be introduced without a stipulation by the State. As these three instances may be determined from the record alone, we will decide them on the merits. *See Fair*, 354 N.C. at 166, 557 S.E.2d at 524.

Defendant was convicted of one count of assault with a deadly weapon inflicting serious injury pursuant to N.C. Gen. Stat. § 14-32(b) and one count of attempted robbery with a dangerous weapon pursuant to N.C. Gen. Stat. § 14-87. "The elements of a charge under G.S. § 14-32(b) are (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Woods*, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997) (citation and quotation marks omitted). The elements of attempted robbery with a dangerous weapon are "(1) the unlawful attempted taking of personal property from another, (2) the possession, use or threatened use of 'firearms or other dangerous weapon, implement or means,' and (3) danger or threat to the life of the victim." *State v. Torbit*, 77 N.C. App. 816, 817, 336 S.E.2d 122, 123 (1985) (citation omitted), *appeal dismissed and cert. denied*, 316 N.C. 201, 341 S.E.2d 573 (1986).

Even assuming *arguendo* that the performance of defendant's trial counsel was deficient for the above reasons, defendant has not demonstrated that there is a "reasonable probability" that the result of the trial would have been different but for his trial counsel's actions. *Poindexter*, 359 N.C. at 291, 608 S.E.2d at 764. There was overwhelming evidence before the jury to support defendant's guilt as

to the two charged offenses. The victim, Joseph Driver testified that he drove to the check cashing store to pick up money wired to his roommate. While returning to his car, Joseph was approached by a man who pointed a gun to his chest and demanded money. At trial, Joseph identified defendant as the man who approached him with a gun. Joseph testified that defendant "had the gun so close to me that at the time I was really fearing for my life[.]" Confirming Joseph's testimony, James Driver testified that he heard defendant say to Joseph, "you're gonna give me the money." Both Joseph and James testified that: when Joseph grabbed defendant's arm, a struggle ensued with defendant; James came to Joseph's assistance; and during that struggle defendant turned his wrist and shot Joseph twice with the gun. The transcript of a recorded Charlotte-Mecklenburg Police Department interview with Joseph on or about 26 January 2007 also confirms that Joseph was approached by a black male with a gun in the parking lot adjacent to the check cashing place, that the man demanded money, and that Joseph was shot during that confrontation. James also identified defendant in a police photo line-up and at trial as the man who demanded money from Joseph, pointed a gun at him, and shot him.

More importantly, in defendant's own statement to police on or about 9 April 2007, defendant said that he intended to rob Joseph Driver on 31 December 2006. Defendant's statement to police also supports Joseph's and James's trial testimony regarding this confrontation: defendant approached a man going to his car in the parking lot beside the check cashing store in an attempt to rob him; defendant drew his semi-automatic handgun; another man came to the first man's aid; a struggle ensued; defendant started shooting; one of the men got control of the gun and began hitting defendant with it; and defendant then ran away. Defendant did not tell the police that his intention was to sell drugs to Joseph or that defendant had met Joseph at a convenience store prior to their confrontation.

In addition to the evidence regarding the details of the commission of the robbery and the shooting as noted above, Joseph admitted in his testimony that he had used marijuana, cocaine, and heroin. Although a medical report mentioning Joseph's "polysubstance abuse" could have tended to support defendant's claim that he was trying to sell drugs to Joseph and not to rob him, Joseph did not deny that he had used illegal drugs, although he denied that he was seeking to buy drugs on 31 December 2006. It is highly unlikely that the admission of the medical report would have made any difference in

STATE OF N.C. DEP'T OF HEALTH & HUMAN SERVS. v. ARMSTRONG

[203 N.C. App. 116 (2010)]

the outcome of the case. Likewise, Randie Greenhough's testimony did not provide any additional evidence of defendant's guilt but simply corroborated Joseph and James Driver's story regarding the reason they went to the check cashing store. Defense counsel did seek to impeach Ms. Greenhough's credibility by questioning her about the prescription drugs she was taking at the time she testified, as well as on 31 December 2006, and regarding her prior cocaine use. It is doubtful that further impeachment of Ms. Greenhough regarding her prior convictions would have made any difference in the outcome of the case.

In light of all the evidence presented as to defendant's guilt, we conclude that even if defendant's arrest for unrelated charges had not been disclosed, Ms. Greenhough had been cross examined about her prior convictions, and Joseph's medical record showing "polysubstance abuse" had been introduced into evidence, it is not probable that the jury would have reached a different result as to any of defendant's charges. *See Poindexter*, 359 N.C. at 291, 608 S.E.2d at 764.

### III. Conclusion

As, there is no "reasonable probability" that in the absence of defendant's trial counsel's alleged errors "the trial result would have been different[,]" *Martin*, —— N.C. App. at ——, 671 S.E.2d at 56, we find no prejudicial error.

NO PREJUDICIAL ERROR.

Judges GEER and ERVIN concur.