An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-536

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

v.

RONALD LEE PUGH

Randolph County
No. 97 CRS 17484

Appeal by defendant from judgment entered 23 September 2010 by Judge V. Bradford Long in Randolph County Superior Court. Heard in the Court of Appeals 23 October 2013.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Danielle Marquis Elder, for the State.*
>
> *Appellate Defender Staples Hughes for defendant.*

HUNTER, Robert C., Judge.

Defendant Ronald Lee Pugh appeals the judgment sentencing him to life imprisonment without parole entered upon his conviction for first degree murder on the bases of premeditation and deliberation and felony murder. Defendant puts forth two arguments on appeal. First, defendant contends that the trial court erred in failing to instruct the jury on second degree murder or, in the alternative, that his trial counsel was ineffective for failing to request the instruction. Second,

defendant argues that because the verdict form does not specify whether the jury found defendant guilty of felony murder based on a completed rape or attempted rape, "this Court cannot determine that the felony murder verdict rests unanimously on a theory supported by the evidence."

After careful review, we: (1) find no error in defendant's conviction for first degree murder based on the felony murder rule; (2) determine that defendant has failed to meet his burden in establishing plain error with regard to his conviction for first degree murder on the basis of premeditation and deliberation; and (3) conclude that defendant's claim for ineffective assistance of counsel fails because defendant is unable to establish prejudice.

## Procedural History

The procedural history of this case is substantial. In 1999, defendant was tried capitally for the murder of Wanda Coltrane ("Ms. Coltrane"). *State v. Poindexter*, 353 N.C. 440, 441, 545 S.E.2d 414, 415 (2001). A jury found him guilty of first degree murder on the basis of premeditation and deliberation and under the felony murder rule and recommended defendant be sentenced to death. *Id*. Defendant was sentenced accordingly. *Id*.

In 2001, our Supreme Court reversed the conviction based on juror misconduct during the guilt-innocence phase of the trial. *Id.* at 444, 545 S.E.2d at 416. In 2002, defendant was retried. *State v. Poindexter*, 359 N.C. 287, 289, 608 S.E.2d 761, 763 (2005) ("*Poindexter II*"). The jury, again, found him guilty of first degree murder and felony murder and recommended a death sentence. *Id.* The trial court imposed a death sentence. *Id.* Defendant appealed his conviction. *Id.*

While his appeal was pending, defendant filed a motion for appropriate relief ("MAR") with our Supreme Court alleging ineffective assistance of trial counsel and requesting adjudication of his claim of mental retardation. *State v. Poindexter*, 357 N.C. 248, 248, 581 S.E.2d 762, 762 (2003). The Supreme Court remanded the MAR to the trial court and ordered it to conduct an evidentiary hearing on the MAR's allegations. *Id.* After an evidentiary hearing, the trial court entered an order denying defendant's request to be adjudicated mentally retarded and defendant's request for a new trial based on an IAC claim alleging ineffectiveness during the guilt-innocence phase of his trial. *Poindexter II*, 359 N.C. at 289, 608 S.E.2d at 763. However, the trial court vacated defendant's death sentence and ordered a new capital sentencing hearing based on his trial

counsel's ineffective assistance during the 2002 sentencing hearing. *Id.*

Our Supreme Court reviewed the trial court's order granting in part and denying in part defendant's MAR. *Id.* It affirmed the trial court's order and remanded for a new capital sentencing hearing. *Id.* Pursuant to N.C. Gen. Stat. § 15A-2004(d), the State decided to not proceed with resentencing and accepted a life sentence for defendant. *Id.* at 296, 608 S.E.2d at 767. On 23 September 2010, the trial court sentenced defendant to life imprisonment without parole. Defendant's current appeal raises alleged errors that occurred in the guilt-innocence stage of his 2002 trial.

**Factual Background**

In 1997, defendant was indicted for killing Ms. Coltrane. Defendant, Ms. Coltrane, and Ms. Coltrane's husband, Willard Coltrane ("Mr. Coltrane"), had been friends for more than twenty years. The Coltranes regularly bought cocaine from defendant.

On 17 December 1997, both Coltranes called defendant numerous times looking for cocaine. Ms. Coltrane picked defendant up at his house and drove to the house of Lori Hurley ("Ms. Hurley"), defendant's niece. Ms. Hurley was not at home at the time. Around noon, Jaren Hulen ("Mr. Hulen"), a pest

exterminator, arrived at Ms. Hurley's house for a scheduled treatment. He noticed a red car parked in the driveway with the door open and engine running. Mr. Hulen knocked on the door, which was slightly open, and heard "stirring around" and a woman's voice calling for help. A few seconds later, defendant came to the door; Mr. Hulen reported that defendant appeared "panicked," with his shirt and belt loose. Mr. Hulen heard dull thuds and another cry for help after defendant shut the door. After getting the license plate number of the car in the driveway, Mr. Hulen drove to a nearby church and called 911.

Also around noon that day, Deputy Nora Walbourne ("Deputy Walbourne") noticed a small red car parked on the shoulder of a rural road. When she stopped, the car sped off, and Deputy Walbourne lost it in pursuit. Less than twenty minutes later, Deputy Walbourne responded to the 911 call Mr. Hulen made. Soon after she arrived at Ms. Hurley's house, the red car she had pursued pulled into the driveway. Defendant was driving and asked for her help. Deputy Walbourne saw Ms. Coltrane slumped over in the front passenger seat with her throat cut. Defendant, Ms. Coltrane, and the car were covered in blood, and defendant appeared "wild-eyed."

Investigators who arrived on the scene noted that Ms. Coltrane's shirt was pulled up around her shoulder blades, and her bra was missing. During a subsequent search of Ms. Hurley's home, investigators found Ms. Coltrane's bra in the master bedroom, and it appeared to have been torn or cut off. Ms. Coltrane's jeans and underwear were partly pulled down.

An autopsy revealed that Ms. Coltrane died as a result of numerous cutting injuries. The fatal wound was a deep cut across her throat. However, she also sustained numerous other injuries from either cutting or blunt force trauma to her face, left arm, abdomen, and head. Because there was no evidence of external or internal injury to her genital area, the sexual assault kit collected from Ms. Coltrane was not analyzed. Later, investigators confirmed that Ms. Coltrane's injuries occurred in Ms. Hurley's house.

In his statements to Deputy Walbourne and another officer on the day of the murder, defendant claimed that two masked gunmen were waiting for him and Ms. Coltrane when they entered Ms. Hurley's house. One of the gunmen dragged her down the hallway to the bedroom. After the exterminator arrived, defendant alleged that Ms. Coltrane broke free and began yelling for help. At that point, one of the gunman cut her throat.

After the two men ordered defendant to drive them away from the home, defendant carried Ms. Coltrane to the car because he knew she could not be left alone. Defendant dropped the men off on a country road before returning back to Ms. Hurley's house.

At trial, a jailhouse informant, Larry Saunders ("Mr. Saunders"), testified that defendant told him that he and Ms. Coltrane had been riding around smoking crack and that defendant admitted to killing Ms. Coltrane after defendant tried to "mess with her." After he cut her throat, defendant allegedly told Mr. Saunders that he rode around with her body looking for a place to dump it. When he arrived back at Ms. Hurley's house, the police had already arrived so he had no choice but to claim someone else had killed her.

Although defendant had requested an instruction on second degree murder in his 1999 trial, he did not request this instruction in his 2002 trial. The trial court instructed the jury on first degree murder on the bases of felony murder and premeditation and deliberation. The jury found defendant guilty of first degree murder on the basis of malice, premeditation, and deliberation and based on the felony murder rule.

**Grounds for Appeal**

On 13 September 2012, defendant filed a petition for writ of certiorari seeking review of the 23 September 2010 judgment entered by Judge V. Bradford Long. This Court allowed defendant's petition for the purpose of reviewing the 2010 judgment which was imposed based on defendant's 2002 trial.

**Arguments**

I. Defendant's Conviction for First Degree Murder Based on Felony Murder

In challenging his conviction for first degree murder on the basis of the felony murder rule, defendant argues that the trial court erred in denying his motion to dismiss for insufficiency of the evidence. Specifically, defendant contends that he is entitled to a new trial because the verdict form does not specify whether the jury found him guilty of felony murder on the basis of rape or attempted rape. Consequently, defendant alleges that the inability to determine whether "jurors based the felony murder verdict on the notion of a completed rape, or not" necessitates this Court vacate his conviction for first degree murder on the basis of felony murder. We disagree.

In determining whether a trial court erred in failing to grant a defendant's motion to dismiss based on the insufficiency of the evidence, this Court's review is well-established: "Upon defendant's motion for dismissal, the question for the Court is

whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). The trial court must review the evidence in the light most favorable to the State. *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993).

Based on our caselaw, defendant's argument is without merit. Essentially, defendant's argument is that there was no evidence presented at trial of a completed rape. Thus, because some jurors may have convicted defendant for felony murder based on a completed rape and others on an attempted rape, this Court must vacate the verdict since it is unable to determine whether the verdict rests unanimously on a theory supported by the evidence.

However, our Supreme Court has concluded that, for purposes of felony murder, if the evidence at trial is sufficient to prove the attempted felony, "a determination of whether the evidence supported a completed [felony] is not necessary to resolve this issue." *State v. Squires*, 357 N.C. 529, 536, 591 S.E.2d 837, 842 (2003). In *Squires*, the defendant was convicted of felony murder predicated on the felony of the sale of cocaine

with the use or possession of a deadly weapon and the felony of "other murder." *Id*. at 534, 591 S.E.2d at 840. With regard to the felony of the sale of cocaine, the trial court instructed the jury that it could find the defendant guilty of felony murder if it found that the defendant committed or attempted to commit a sale of cocaine with the use or possession of a deadly weapon. *Id*. Thus, under this theory of felony murder, the jury could have convicted the defendant of felony murder if he actually completed a sale of cocaine or attempted to complete a sale. The defendant argued that the trial court erred in not granting his motion to dismiss for insufficiency of the evidence because "some jurors may have found a completed sale while others found an attempted sale." *Id*. at 536, 591 S.E.2d at 842. Our Supreme Court disagreed, noting: "Even if some jurors found a completed sale of cocaine rather than an attempted sale, this discrepancy would not change the result. When a jury finds the facts necessary to constitute one offense, it also inescapably finds the facts necessary to constitute all lesser-included offenses of that offense." *Id*. The Court went on to say that:

> Attempted sale of cocaine is a lesser-included offense of the sale of cocaine. Therefore, any member of the jury who found the elements constituting a sale of cocaine must necessarily have found the elements of attempted sale of cocaine. Since the

> evidence at trial was sufficient to prove attempted sale of cocaine and since all jurors necessarily found an attempted sale, a determination of whether the evidence supported a completed sale of cocaine is not necessary to resolve this issue. We hold that the trial court's submission to the jury of "sale of cocaine" as a predicate felony to support defendant's felony murder conviction for [the victim's] death was not error.

*Id.*

Attempted rape is a lesser included offense of first degree rape. *State v. Green*, 95 N.C. App. 558, 563, 383 S.E.2d 419, 422 (1989). Therefore, as in *Squires*, any member of the jury who found the elements constituting a completed rape must necessarily have found the elements of an attempted rape. If the evidence was sufficient to prove defendant was guilty of attempted rape, then all the jurors would have necessarily found defendant attempted to rape Ms. Coltrane. Accordingly, based on *Squires*, it would not be necessary to determine whether the evidence supported a completed rape.

"The two elements of attempted rape are the intent to commit rape and an overt act done for that purpose which goes beyond mere preparation but falls short of the completed offense." *State v. Bell*, 311 N.C. 131, 140, 316 S.E.2d 611, 616 (1984). "Intent to rape may be proved circumstantially by

inference, based upon a defendant's actions, words, dress, or demeanor." *State v. Oxendine*, 150 N.C. App. 670, 674, 564 S.E.2d 561, 564 (2002) (internal quotation marks omitted). Furthermore, an "overt act manifesting a sexual purpose or motivation on the part of the defendant is adequate evidence of an intent to commit rape." *Id*.

Considering the evidence in a light most favorable to the State, a reasonable jury could infer that defendant intended to rape Ms. Coltrane. Investigators found Ms. Coltrane's bra, which had been forcibly removed, at Ms. Hurley's house. When Ms. Coltrane's body was found, her shirt was forced up around her shoulder blades and her jeans and underwear were partly pulled down. Moreover, Mr. Saunders testified that defendant allegedly admitted to him that he tried to "get with" Ms. Coltrane. While it is uncontroverted that Ms. Coltrane had not suffered any trauma to her genital area and that the sexual assault kit sample was never tested, the State presented substantial evidence that defendant intended to rape Ms. Coltrane and that he engaged in an overt act for that purpose. Thus, since the evidence was sufficient to prove defendant attempted to rape Ms. Coltrane and because all jurors necessarily found an attempted rape, the trial court's

submission to the jury based on the predicate felony of attempted rape or rape does not constitute error, *see Squires*, 357 N.C. App. at 536, 591 S.E.2d at 842, and the trial court did not err in denying his motion to dismiss. Defendant's conviction for first degree murder on the basis of felony murder is left undisturbed.

II. Defendant's Conviction for First Degree Murder on the Basis of Premeditation and Deliberation

Next, with regard to defendant's conviction for first degree murder on the basis of premeditation and deliberation, defendant argues that the trial court committed plain error in failing to instruct the jury on second degree murder. In the alternative, defendant contends that his trial counsel was constitutionally ineffective in failing to request this instruction. Even assuming *arguendo* that the trial court erred in refusing to instruct on second degree murder, this error would not affect the jury's verdict finding defendant guilty of first degree murder based on the felony murder rule. Therefore, defendant is unable to meet his burden of demonstrating plain error.

Because defendant failed to request an instruction on second degree murder, we review for plain error. *State v. Carter*, 366 N.C. 496, 497, 739 S.E.2d 548, 549 (2013); *State v.*

*Boyett*, __ N.C. App. __, __, 735 S.E.2d 371, 374 (2012). Our Supreme Court has recently clarified the plain error standard of review:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations and quotation marks omitted).

Here, the jury was presented with two theories of first degree murder: (1) premeditation and deliberation; and (2) felony murder. The jury convicted defendant of first degree murder under both theories. Assuming *arguendo* that the trial court erred by failing to instruct on second degree murder, defendant is unable to establish that the error would have a probable impact on the jury finding defendant guilty for first degree murder based on felony murder. In other words, that supposed error would only affect defendant's conviction for first degree murder based on premeditation and deliberation. Since we have found no error with regard to defendant's conviction for first degree murder based on felony murder, as discussed above, defendant is unable to establish plain error.

With regards to defendant's claim for ineffective assistance of counsel based on his counsel's failure to request an instruction on second degree murder, we conclude it is without merit. To establish that defendant's counsel fell below an objective standard of reasonableness, the defendant must satisfy the two-prong test created by the United States Supreme Court in *Washington v. Strickland*, 466 U.S. 668, 280 L. Ed. 2d 674 (1984), and adopted by our Supreme Court in *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985):

> In order to meet this burden [the] defendant must satisfy a two part test. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's error were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

(quoting *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693). Since defendant's conviction for felony murder was free from error and that judgment is not affected by the trial court's alleged error in refusing to instruct on second degree murder, defendant is unable to establish the second prong of the

*Strickland* test: that he was prejudiced as a result. Consequently, defendant's argument is overruled.

**Conclusion**

In summary, we find no error in defendant's conviction for first degree murder based on felony murder pursuant to *Squires* and that conviction remains undisturbed. In addition, even assuming *arguendo* that the trial court erred in refusing to instruct on second degree murder, this error would have no impact on the jury's finding defendant guilty of first degree murder based on the felony murder rule. Thus, defendant is unable to establish plain error. Finally, with regard to defendant's ineffective assistance of counsel claim, defendant is unable to establish prejudice, the second prong under *Strickland*. Therefore, defendant's claim has no merit.

CONVICTION OF FIRST DEGREE MURDER ON BASIS OF FELONY MURDER: NO ERROR.

CONVICTION FOR FIRST DEGREE MURDER ON THE BASIS OF PREMEDITATION AND DELIBERATION: NO PLAIN ERROR.

Judges CALABRIA and ROBERT N. HUNTER, JR. concur.

Report per Rule 30(e).