STATE OF NORTH CAROLINA v. FLOYD LINDSEY HUDSON

No. 99

(Filed 15 December 1971)

1. **Rape § 18— assault with intent to commit rape — evidence of intent — failure to show attempted coition**

In a prosecution for assault with intent to commit rape, the State's evidence showing that the defendant continually and brutally assaulted the prosecutrix, a 14-year-old girl, was sufficient to support a jury inference that the defendant intended at some time during his assaults to rape the prosecutrix, even though the prosecutrix did not testify that the defendant ever attempted coition.

2. **Rape § 7— assault with intent to commit rape — elements of proof**

To convict a defendant on the charge of an assault with intent to commit rape, the State must prove not only an assault but also that the defendant intended to gratify his passion on the person of the woman, at all events notwithstanding any resistance on her part.

3. **Rape § 17— assault with intent to commit rape — element of intent**

It is not necessary that defendant retain an intent to commit rape throughout the assault on the female; the defendant would be guilty of the offense if he, at any time during the assault, had an intent to gratify his passion upon the female, notwithstanding any resistance on her part.

4. **Jury § 3; Constitutional Law § 29— guilty verdict by eleven jurors — award of new trial**

The return of a guilty verdict by eleven jurors — one juror having become ill during the trial — was a nullity, and the defendant is entitled to a new trial.

5. **Criminal Law § 146— nature of Supreme Court jurisdiction — notice ex mero motu of fatal defect**

The Supreme Court *ex mero motu* takes notice of the fact that a verdict was returned by eleven jurors only, a fatal defect appearing on the face of the record, and awards the defendant a new trial.

**6. Jury § 3; Constitutional Law § 29— criminal trial — number of jurors**

> No person can be finally convicted of any crime except by the unanimous consent of twelve jurors who have been duly impaneled to try his case.

APPEAL by defendant from *Gambill, J.,* 4 January 1971 Session of CABARRUS, transferred from the Court of Appeals for initial appellate review by the Supreme Court under its general order of 31 July 1970, entered pursuant to G.S. 7A-31(b)(4).

Defendant was tried upon a bill of indictment which charged that on 25 September 1970 he, a male person over the age of eighteen years, did feloniously assault Clemmie Hacker, a female, with intent to ravish, carnally know, and abuse her.

The evidence for the State tended to show: Clemmie (aged 14) lives with her mother and sister in Concord. Her father is dead. On 25 September 1970, about 10:00 p.m., Clemmie was alone at home when defendant, who had once washed and cleaned her mother's car, came to the door. He asked to use the telephone and she admitted him. Instead of telephoning, he "walked" Clemmie to his car and told her not to scream. She went with him because she was afraid. He said he'd bring her back in five minutes. Instead, he drove her to his trailer on a dirt road.

In the trailer, after taking off all his clothes, he produced a knife and said he would kill her if she did not disrobe; she did as he told her. She was menstruating. He "socked" her across the face, hit her nostril and crushed a bone. Her nose bled profusely. He hit her with his fist and knocked out four teeth. At some point she "accidentally got some blood on the sheets, and he got mad." At the trailer he did not attempt sexual intercourse with her, but he inserted his finger and, in addition, used her genitalia in a manner too revolting to relate. Thereafter he put on some different clothes, removed the sheets from the bed, and took her, naked, back to the car. She could hardly walk and fell on the gravel, but he made her get up and get into the car. He then "drove off from that place."

At some spot, where they were on the ground, he "took some kind of a bottle and jammed it into [her] vagina." She was still conscious and naked when they stopped at a bridge. He placed her on the sheets in some grass, choked her, and closed her left eye with a blow from his first. (Clemmie's testimony was

not elicited so as to give a chronological account of events, and from the transcript it is difficult to piece the story together. Whether this confusion results from the manner in which the solicitor conducted his direct examination, her injuries, or her natural timidity and embarrrassment, we cannot tell.)

Sometime before 2:00 a.m., a passing motorist saw a naked girl "down a bank at Rocky River Bridge" and notified the sheriff's office. Deputy Sheriff Eggers found Clemmie beneath the bridge, approximately twenty-five feet down a bank. She was nude; her face was swollen; and she was bleeding from the mouth and nose.

Clemmie was taken to the Cabarrus Hospital where, between 2:00 and 4:00 a.m., she was examined by a neurosurgeon. He found her in a state of shock, unable to give an adequate history. She was bleeding from the mouth and the back of her head; the upper teeth on the left side had been knocked out. Her whole face and neck were markedly swollen with multiple contusions and abrasions. She had multiple abrasions and scratches on the upper and lower extremities. A gynecologist repaired a laceration of the perineum.

About 2:00 on the morning of 26 September 1971, officers found defendant at his trailer-home, about two miles from Concord, with his "common-law wife," Mrs. Martha Christy. In the trailer the officers found Clemmie's eyeglasses and a torn accessory. Defendant had the odor of alcohol about him, but he did not appear to be drunk. He told the officers that earlier in the night Clemmie had let him in her house to use the telephone; that she was alone and he had taken her to his apartment where he removed her clothing; that he did not remember exactly what took place thereafter except that she had gotten blood on the bed sheets; that he had put the girl and the sheets into the car and left them at the Rocky River Bridge.

Defendant offered no evidence. His motion for nonsuit was denied. The jury's verdict was guilty as charged. From a sentence of 12-15 years, defendant appealed.

*Attorney General Morgan; Assistant Attorney General Hudson for the State.*

*Johnson, Davis & Horton for defendant appellant.*

SHARP, Justice.

[1] Defendant brings forward only one assignment of error, the failure of the court to allow his motion for nonsuit. He asserts that all the evidence tends to show that the purpose of his assaults upon Clemmie was not to rape her but to engage in perverted and unnatural sex acts.

Considering the grievous injuries which defendant inflicted upon Clemmie—especially the head injury—we may doubt whether she was able to remember and recount all that defendant did to her. Yet, upon the assumption that she told all, we hold her testimony sufficient to withstand the motion for nonsuit.

[2, 3] The requisites of the crime with which defendant is charged have been stated many times: To convict a defendant on the charge of an assault with an intent to commit rape the State must prove not only an assault but that the defendant intended to gratify his passion on the person of the woman, at all events and notwithstanding any resistance on her part. It is not necessary that defendant retain that intent throughout the assault; if he, at any time during the assault, had an intent to gratify his passion upon the woman, notwithstanding any resistance on her part, the defendant would be guilty of the offense. "Intent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence, it must ordinarily be proven by circumstantial evidence, *i.e.*, by facts and circumstances from which it may be inferred." *State v. Gammons*, 260 N.C. 753, 756, 133 S.E. 2d 649, 651. To convict a defendant of an assault with intent to commit rape "an actual physical attempt forcibly to have carnal knowledge need not be shown." 75 C.J.S. Rape § 77, p. 557 (1952).

Although Clemmie did not testify that defendant ever attempted coition, his attack upon her was indisputably sexually motivated, and we think the jury could reasonably infer from his treatment of her that defendant intended at some time during his continuous assaults to rape Clemmie if he could, notwithstanding any resistance on her part; that she, a girl of fourteen, confronted by a mature man, armed with a knife with which he threatened to kill her, resisted all she could. *State v. Mabry*, 269 N.C. 293, 152 S.E. 2d 112.

In *State v. Mehaffey,* 132 N.C. 1062, 44 S.E. 107, the defendant, aged fifty-four, appealed a conviction of assault with the intent to rape a fourteen-year-old girl whom he had employed to work on his farm. The State's evidence tended to show that in the course of an indecent assault upon her, the defendant twice inserted his finger into her person but then, for some unknown reason—perhaps because of her screams—he finally desisted. In sustaining the conviction, Chief Justice Clark said: "Whether he desisted for that reason, or because at his age he could not accomplish his purpose after so vigorous an opposition, or because he was physically unable to overcome her opposition, or because he did not intend to have intercourse with her by force, was a matter for the jury alone, and was properly left to them in connection with all the other evidence in the case. It is true, he desisted, that is to say, he did not succeed in having sexual intercourse with the girl. . . . [b]ut his failure is not conclusive of the absence of intent. . . . " (Citations omitted.) *Id.* at 1065, 44 S.E. at 108.

"Impossibility of having carnal knowledge of the girl does not, as a matter of law, prevent a man from feloniously so trying." *Huggins v. State,* 41 Ala. App. 548, 551, 142 So. 2d 915, 918.

Defendant was living with his common-law wife who, although absent from his trailer earlier in the evening, was there at 2:00 a.m. when the officers went for him. It may be inferred from this illicit arrangement and his anger when Clemmie bled on the sheets, that defendant was not impotent.

We hold that the evidence, when viewed in the light most favorable to the State, was sufficient to be submitted to the jury upon the issue of defendant's guilt of the crime charged.

[4, 5]   Although defendant has not assigned it as error, and the Attorney General has ignored it, we must, *ex mero motu,* take notice of a fatal defect appearing upon the face of the record. Between the conclusion of the evidence and the judge's charge to the jury, a juror became ill and had to be excused. Whereupon, defendant and his trial counsel, Mr. Bedford W. Black (now deceased) "waived trial by twelve." They agreed that the eleven remaining jurors might pass upon defendant's guilt or innocence and that defendant would be bound by their verdict. The trial then proceeded with eleven jurors who "returned a verdict of guilty as charged."

It is a fundamental principle of the common law, declared in Magna Charta and incorporated in our Declaration of Rights, that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N. C. Const., art. I, § 24 (1971). *See* N. C. Const., art. I, § 13 (1868); *State v. Moss,* 47 N.C. 66 (1854); *State v. Stewart,* 89 N.C. 563 (1883). In this State, the only exception to the rule that "nothing can be a conviction but the verdict of a jury" *(State v. Alexander,* 76 N.C. 231, 233) is the constitutional authority granted the General Assembly to provide for the *initial* trial of misdemeanors in inferior courts without a jury, with trial *de novo* by a jury upon appeal. N. C. Const., art. I, § 24 (1971).

[6]   It is elementary that the jury provided by law for the trial of indictments is composed of twelve persons; a less number is not a jury. It is equally rudimentary that a trial by jury in a criminal action cannot be waived by the accused in the Superior Court as long as his plea remains "not guilty." *State v. Stewart, supra; State v. Scruggs,* 115 N.C. 805, 20 S.E. 720 (1894); *State v. Rogers,* 162 N.C. 656, 78 S.E. 293 (1913); *State v. Rouse,* 194 N.C. 318, 139 S.E. 433 (1927); *State v. Camby,* 209 N.C. 50, 182 S.E. 715 (1935); *State v. Hill,* 209 N.C. 53, 182 S.E. 716 (1935); *State v. Norman,* 276 N.C. 75, 170 S.E. 2d 923 (1969). As noted in *State v. Norman, supra,* both the Judicial Council and the Constitutional Study Commission recommended to the 1969 General Assembly that the Constitution be modified so as to empower that body, if it so desired, to give a defendant the option of having his guilt passed upon by a judge rather than a jury. The General Assembly rejected the proposal; so it remains the law of North Carolina that no person can be finally convicted of any crime except by the unanimous consent of twelve jurors who have been duly impaneled to try his case.

In *State v. Rogers, supra,* during the defendant's trial for murder a juror became ill. The State was willing to call in another juror or to make a mistrial or to get an entirely new panel. Counsel for the defendant, however, insisted on proceeding with eleven jurors. Thereupon, in open court it was agreed by the defendant, his counsel, and the solicitor for the State that the trial would proceed with eleven jurors. The defendant expressly waived his right to have a full panel and agreed that the clerk should make no record of the fact that one of the

jury had been excused by consent. Upon his conviction of man-slaughter, however, the defendant moved in arrest of judgment because he had not been convicted by a jury of twelve. The trial judge ruled that the defendant had estopped himself to assign this error and denied the motion. Upon appeal, Justice Brown, speaking for the Court, said: "The defendant may plead guilty, or *nolo contendere,* or *autrefois convict,* and of course the im-paneling of a jury is unnecessary; but when he pleads not guilty in cases, such as this, where a trial by jury is guaranteed by the organic law, he must be tried by a jury of twelve men, and he cannot waive it." *Id.* at 660, 78 S.E. at 294. A new trial was ordered.

In *State v. Berry,* 190 N.C. 363, 130 S.E. 12, the defendant appealed his conviction of an assault with a deadly weapon. This Court said: "It appearing by the record that the defendant was tried and convicted by ten men, the conviction was improper and no judgment could be rendered. For the reason given, there must be a New trial." Id. at 364, 130 S.E. at 12.

In *State v. Rouse, supra,* a juror was taken very ill during the trial. By agreement of defendant, who was charged with a felony, his counsel and the solicitor, the juror was excused and the case concluded with eleven jurors. Upon conviction defend-ant appealed. In holding that defendant was not precluded by his agreement from assigning as error that the judgment against him was based upon the verdict of eleven jurors, Justice Connor said: "The decisions of this Court in support of the assignment of error are unanimous. . . . The verdict is a nullity. The defend-ant is entitled to a New trial." *Id.* at 318-19, 139 S.E. at 433.

The verdict in this case is likewise a nullity despite de-fendant's failure to assign his conviction by eleven jurors as error. If imprisoned under the sentence imposed defendant would be entitled to his release upon a writ of habeas corpus—for which he would, no doubt, apply in due time. There must be a

*New Trial.*