IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-67

No. 279A20

Filed 11 June 2021

STATE OF NORTH CAROLINA

v.

DEMON HAMER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 272 N.C. App. 116, 845 S.E.2d 846 (2020), affirming a judgment entered on 29 November 2018 by Judge Michael J. O'Foghludha in Superior Court, Orange County. Heard in the Supreme Court on 22 March 2021.

*Joshua H. Stein, Attorney General, by Robert C. Ennis, Assistant Attorney General, for the State-appellee.*

*W. Michael Spivey for defendant-appellant.*

BERGER, Justice.

On November 29, 2018, defendant was found guilty in a bench trial of speeding 94 miles per hour in a 65 mile-per-hour zone. A divided panel of the Court of Appeals determined that even though the trial court failed to follow the procedure set forth in N.C.G.S. § 15A-1201 for waiver of defendant's right to a jury trial, defendant was not prejudiced by the trial court's noncompliance. Defendant appeals.

## I.   Factual and Procedural Background

On the afternoon of January 12, 2018, Trooper Tracy Hussey with the North

Carolina State Highway Patrol observed a black 2017 Jeep traveling westbound on I-40 in Orange County. Using a handheld LIDAR device for speed detection, Trooper Hussey determined that the vehicle was traveling 94 miles per hour. The speed limit on this section of I-40 is 65 miles per hour.

Trooper Hussey relayed information about the 2017 black Jeep to Trooper Michael Dodson with the North Carolina State Highway Patrol, who then initiated a traffic stop. Trooper Dodson identified the driver of the Jeep as defendant. Trooper Dodson issued a citation to defendant for speeding 94 miles per hour in a 65 mile-per-hour zone in violation of N.C.G.S. § 20-141(j1) and for reckless driving in violation of N.C.G.S. § 20-140(b).

On July 26, 2018, defendant pleaded guilty in Orange County District Court to speeding 94 miles per hour in a 65 mile-per-hour zone, and he was ordered to pay a $50.00 fine and costs. The State dismissed the reckless driving charge. Defendant filed written notice of appeal for trial de novo in Orange County Superior Court. Defendant entered a plea of not guilty, and he was appointed a public defender for the traffic charges.

When the matter came on for trial, defense counsel announced that defendant wanted his case to be tried in a bench trial. The State consented to this request. The following exchange occurred on the record in open court:

> THE COURT: Okay. So first of all, just technically, the defendant is waiving a jury trial?

[DEFENSE COUNSEL]:  That's correct, Your Honor.

THE COURT:         Okay. And I presume that there is a statute that allows that?

[DEFENSE COUNSEL]:  That is correct, Your Honor. We have—the State and I have—the State has consented.  We have—there is no disagreement about the bench trial.

THE COURT:         Is it the same statute that says that Class I felonies can be waived?  Is it under that same statute?

[DEFENSE COUNSEL]: If I'm not mistaken, Your Honor—

THE COURT:         I know that one requires the consent of the State.

[DEFENSE COUNSEL]:  I apologize.

[THE STATE]:        Your Honor, I believe it's controlled by 15A-1201—

THE COURT:         Okay. Which does allow waiver of trial in a misdemeanor?

[THE STATE]:        That's correct, Your honor. Or I believe any charge except a capital offense.

THE COURT:         Okay.

[DEFENSE COUNSEL]:  It's 15A-1201 subsection (b).

THE COURT:         Thank you, sir. So just as a technical matter, this is a—so that—that's accepted by the [c]ourt under that statute since the State consents.

¶ 6     After the State rested its case-in-chief, the trial court revisited defendant's waiver of jury trial in the following exchange:

THE COURT:                    . . . I was just reading 20-1250—
I'm sorry—15A-1201, we complied completely with that
statute with the exception of the fact that I'm supposed to
personally address the defendant and ask if he waives a
jury trial and understands the consequences of that. Would
you just explain that to your client.

(Pause in proceedings while [defense counsel] consulted
with the defendant.)

[DEFENSE COUNSEL]:  Okay, Your Honor.

THE COURT:                    Okay. . . .

. . . .

Mr. Hamer, I just have to comply with the law and ask you
a couple of questions.  That statute allows you to waive a
jury trial.  That's 15A-1201.  Your [defense counsel] has
waived it on your behalf.  The State has consented to that.
Do you consent to that also?

DEFENDANT:                    Yes, sir.

THE COURT:                    And you understand that the
State has dismissed the careless and reckless driving.  The
only allegation against you is the speeding, and that is a
Class III misdemeanor. It does carry a possible fine. And
under certain circumstances it does carry [a] possibility of
a 20-day jail sentence. Do you understand that?

DEFENDANT:                    Yes, sir.

THE COURT:                    All right. Is that acceptable to
you?

DEFENDANT:                    Yes, sir. I feel confident it was.

¶ 7        Defendant was subsequently found guilty of speeding 94 miles per hour in a 65

mile-per-hour zone and was ordered to pay court costs.  Defendant appealed and was

assigned an appellate defender. On appeal, defendant argued that the trial court erred in conducting a bench trial because defendant did not knowingly and voluntarily waive his right to a jury trial.

¶ 8        In a published opinion filed on June 16, 2020, the Court of Appeals held that despite the trial court's initial noncompliance with N.C.G.S. § 15A-1201, the trial court remedied the initial error, thus satisfying N.C.G.S. § 15A-1201, and that defendant was not prejudiced by the error. *State v. Hamer*, 272 N.C. App. 116, 127, 845 S.E.2d 846, 853 (2020). The dissenting judge argued that the failure of the trial court to engage in a colloquy at the outset constituted structural error, requiring a new trial. *Id.* at 155, 845 S.E.2d at 870 (McGee, C.J., dissenting). Defendant appeals.

## II.   Analysis

¶ 9        On appeal, defendant argues that he did not knowingly and voluntarily waive his constitutional right to a jury trial. We disagree.

¶ 10        In 2014, the people of North Carolina amended our State constitution to allow criminal defendants to waive their right to trial by jury in favor of a bench trial. *See* N.C. Const. art. I, § 24 (stating that a criminal defendant in a noncapital case "in superior court may, in writing or on the record in the court and with the consent of the trial judge, waive jury trial, subject to procedures prescribed by the General Assembly"); *see also* N.C.G.S. § 15A-1201(a) (2019) (where a noncapital "defendant enters a plea of not guilty [in superior court, the defendant] must be tried before a

jury, unless the defendant waives the right to a jury trial, as provided in subsection (b) of this section").

¶ 11 A defendant in a noncapital case may "knowingly and voluntarily, in writing or on the record in the court and with the consent of the trial judge, waive the right to trial by jury." N.C.G.S. § 15A-1201(b). The defendant must provide notice of the waiver by either (1) a stipulation signed by the State and the defendant; (2) the filing of a written notice of intent with the court; or (3) providing notice in open court by the time of the arraignment or the calling of the calendar, whichever is earlier. N.C.G.S. § 15A-1201(c). Once the defendant provides notice, the court must then:

> (1) Address the defendant personally and determine whether the defendant fully understands and appreciates the consequences of the defendant's decision to waive the right to trial by jury.
>
> (2) Determine whether the State objects to the waiver and, if so, why. Consider the arguments presented by both the State and the defendant regarding the defendant's waiver of a jury trial.

N.C.G.S. § 15A-1201(d).

¶ 12 Defendant argues that he is entitled to a new trial because the trial court committed structural error through its noncompliance with N.C.G.S. § 15A-1201(d)(1).

¶ 13 The Supreme Court of the United States has previously defined structural error as "defect[s which] affect[ ] the framework within which the trial proceeds,

rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). In other words, structural error is a defect in which "[t]he entire conduct of the trial from beginning to end is obviously affected." *Id.* at 309–10. The Supreme Court has noted six instances where structural error had been found: (1) "total deprivation of the right to counsel"; (2) "lack of an impartial trial judge"; (3) "unlawful exclusion of grand jurors of defendant's race"; (4) violation of "the right to self-representation at trial"; (5) violation of "the right to a public trial"; and (6) "erroneous reasonable-doubt instruction to jury." *Johnson v. United States*, 520 U.S. 461, 468–69 (1997).

¶ 14 This Court has previously applied the Supreme Court's structural error interpretation in *Fulminante* and the six exceptions outlined in *Johnson*. *See State v. Anderson*, 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002) (applying *Fulminante* to the defendant's argument that the prosecutor's allegedly improper questions and comments constituted structural error); *State v. Garcia*, 358 N.C. 382, 410, 597 S.E.2d 724, 745 (2004) ("In each of the six United States Supreme Court cases rectifying structural error, the defendant made a preliminary showing of a violated constitutional right and the identified constitutional violation *necessarily* rendered the criminal trial fundamentally unfair or unreliable as a vehicle for determining guilt or innocence.").

¶ 15 In support of his structural error argument, defendant cites to several cases in

which our Court found the trial court committed "a form of structural error known as error per se" because the trial court violated a defendant's constitutional right to be tried by twelve jurors. *State v. Lawrence*, 365 N.C. 506, 514, 723 S.E.2d 326, 331 (2012) ("North Carolina courts also apply a form of structural error known as error per se" for certain violations of the North Carolina Constitution). *See State v. Poindexter*, 353 N.C. 440, 444, 545 S.E.2d 414, 416 (2001) (concluding that the defendant's constitutional rights were violated per se when the trial court dismissed one juror for misconduct and allowed the defendant to be capitally sentenced by less than twelve jurors); *State v. Bunning*, 346 N.C. 253, 257, 485 S.E.2d 290, 292–93 (1997) (holding that the defendant's constitutional rights were violated per se when only eleven jurors fully participated in reaching a verdict in a capital case); *State v. Hudson*, 280 N.C. 74, 80, 185 S.E.2d 189, 193 (1971) (ordering a new trial *ex mero motu* because although the defendant waived his right to trial by twelve jurors, the defendant's constitutional rights were violated when a jury of less than twelve jurors rendered a guilty verdict).

¶ 16        The cases cited by defendant in support of his structural error argument relate to the make up and proper function of the jury. While the deprivation of a properly functioning jury may be a constitutional violation, the failure of the trial court to conduct an inquiry pursuant to the procedures set forth in N.C.G.S. § 15A-1201(d) is a statutory violation.

¶ 17     In *State v. Garcia*, the defendant argued that the trial court committed structural error by deviating from the jury selection procedure of N.C.G.S. § 15A-1214 which violated his constitutional right to be tried by a fair and impartial jury. *Garcia*, 358 N.C. at 404, 597 S.E.2d at 741. Specifically, the defendant argued that the trial court "committed structural constitutional error by requiring defendant to question replacement jurors before the State approved a full panel of twelve individuals," *id.* at 404, 597 S.E.2d at 741, and that "[t]he prosecutor passed less than a full panel of twelve replacement jurors to defendant on two separate occasions." *Id.* at 406, 597 S.E.2d at 742. While criminal defendants have a constitutional right to be tried by a fair and impartial jury, this Court failed to find structural error because the defendant "ha[d] shown only a technical violation of the state jury selection statute." *Id.* at 410, 597 S.E.2d at 745.

¶ 18     Here, defendant's argument does not relate to the constitutional sufficiency of a properly functioning jury. Rather, defendant contends that the trial court's failure to follow the statutorily prescribed procedure for waiver of a jury trial deprived him of a jury trial that he did not want. Defendant argues that no subsequent action by the trial court could remedy the statutory violation. Defendant's structural error argument would impose a per se rule that would rigidly require a new trial for technical violations of N.C.G.S. § 15A-1201(d), without regard to the facts and circumstances of a particular case and without consideration of prejudice to the

defendant. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942) ("[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.").

¶ 19 Here, the trial court's statutory violation is "simply an error in the trial process itself" that did not "affect the framework within which the trial proceed[ed]." *Lawrence*, 365 N.C. at 513–14, 723 S.E.2d at 331 (cleaned up) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). Because "the error relates to a right not arising under the United States Constitution, North Carolina harmless error review requires the defendant to bear the burden of showing prejudice." *Lawrence*, 365 N.C. at 513, 723 S.E.2d at 331; *see also State v. Pruitt*, 322 N.C. 600, 603, 369 S.E.2d 590, 592 (1988) (determining whether prejudicial error occurred when the trial court failed to properly conduct a statutory inquiry with a pro se defendant).

¶ 20 N.C.G.S. § 15A-1443(a) provides the following:

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C.G.S. § 15A-1443(a) (2019); *see Lawrence*, 365 N.C. at 513, 723 S.E.2d at 331 (stating that defendants have the burden of showing there is "a reasonable possibility that, had the error in question not been committed, a different result would have been

reached at the trial out of which the appeal arises" (quoting N.C.G.S. § 15A-1443(a) (2009))).

¶ 21        While the right to a jury trial is rooted in both our State constitution and the United States Constitution, the trial court's error here concerns a statutory procedure allowing criminal defendants to waive this constitutional right. *See* N.C. Const. art. I, § 24. Thus, in cases where the trial court commits a statutory violation, the defendant is not guaranteed a new trial, rather "[t]his Court has consistently required that defendants claiming [a procedural error] show prejudice in addition to a statutory violation before they can receive a new trial." *Garcia*, 358 N.C. at 406, 597 S.E.2d at 742–43. Here, defendant bears the burden of demonstrating not only that an error occurred, but also that he was prejudiced by the error.

¶ 22        At trial, defense counsel gave notice of and the State consented to proceeding with defendant's case through a bench trial  The trial court discussed the waiver with counsel on the record and in the presence of defendant. However, the trial court failed to conduct an inquiry with defendant pursuant to N.C.G.S. § 15A-1201(d). After the State rested its case, the trial court acknowledged the failure to comply with N.C.G.S. § 15A-1201 and specifically requested that defense counsel explain to defendant that the trial court is to "address the defendant and ask if he waives a jury trial and understands the consequences of that." In a colloquy with the trial court, defendant affirmed the waiver announced by defense counsel prior to trial and personally

consented to waiver of trial by jury.

¶ 23     Although the trial court's colloquy was untimely, N.C.G.S. § 15A-1201(d)(1) simply requires the trial court to "determine whether the defendant fully understands and appreciates the consequences of the defendant's decision to waive the right to trial by jury." N.C.G.S. § 15A-1201(d)(1). Here, the pretrial exchange between the trial court, defense counsel, and the State, coupled with defendant's subsequent clear and unequivocal answers to questions posed by the trial court demonstrated that he understood he was waiving his right to a trial by jury and the consequences of that decision. There is no evidence in the record to demonstrate that defendant was not aware of his right to a jury trial or his right to waive the same.

¶ 24     Defendant had the right to waive a trial by jury, and the record tends to show that defendant's strategy was to have the merits of his case decided in a bench trial. During his colloquy with the trial court, defendant was asked if he consented to the waiver of his right to trial by jury. Defendant answered in the affirmative. Subsequently, the trial court asked defendant if proceeding without a jury was acceptable to him. Defendant again answered in the affirmative. Although this type of inquiry should have been conducted prior to trial, defendant had the unique authority to compel the trial court to declare a mistrial. Defendant was arguably in a more advantageous position to enter a knowing and voluntary waiver at this point in the proceedings than he would have been if the inquiry had occurred prior to trial.

Defendant's desire to be tried in a bench trial was affirmed after he heard the evidence presented by the State, knew that the trial court erred, and was given the opportunity to revoke the waiver and start anew, but he ultimately reaffirmed the waiver.

¶ 25         Further, there was overwhelming evidence of defendant's guilt presented at trial. The State was required to prove beyond a reasonable doubt that defendant drove "a vehicle on a highway at a speed that is either more than 15 miles per hour more than the speed limit established by law for the highway where the offense occurred or over 80 miles per hour." N.C.G.S. § 20-141(j1) (2019). Trooper Hussey testified that there was a black Jeep traveling on I-40 and determined that the vehicle was traveling at a speed of 94 miles per hour in a 65 mile-per-hour zone. The speed of the vehicle was nearly 30 miles per hour above the posted speed limit, and well in excess of 80 miles per hour. Trooper Dodson then testified that defendant was the driver of the black Jeep. The evidence supports a finding that defendant was guilty of speeding under N.C.G.S. § 20-141(j1), and defendant has not met his burden as there is no reasonable possibility that had the error in question not been committed, a different result would have been reached in a bench trial or a jury trial. *See* N.C.G.S. § 15A-1443(a) (2019).

         AFFIRMED.

Justice ERVIN, dissenting.

I am unable to join my colleagues' decision to uphold the trial court's judgment in this case given my belief that it rests upon a significant understatement of the extent of the trial court's failure to comply with the applicable statutory procedures, a fundamental misapprehension of the nature of the claim that defendant has asserted, and the use of an erroneous standard for determining when a showing of prejudice is and is not required before an award of appellate relief becomes appropriate. Simply put, I believe that the majority's decision involves a substantial deviation from this Court's precedent that has the effect of countenancing a violation of defendant's fundamental right to trial by jury. As a result, I would hold that defendant is entitled to a new trial and dissent from my colleagues' decision to the contrary.

A criminal defendant's right to trial by jury is one of the bedrock principles of American and English law. Magna Carta provides that "[n]o freeman shall be seized, or imprisoned, or dispossessed, or outlawed, or in any way destroyed; nor will we condemn him, nor will we commit him to prison, excepting by the legal judgment of his peers, or by the law of the land." Ray Stringham, *Magna Carta: Fountainhead of Freedom* 235 (1966) (providing an English translation of the Magna Carta of 1215). No less an authority than Blackstone lauded "[t]he antiquity and excellence" of trial by jury, in accordance with which "the truth of every accusation . . . should . . . be confirmed by the unanimous suffrage of twelve of his equals." 4 William Blackstone, *Commentaries*, *349–50. In recognition of the fundamental importance of the right

to trial by jury, the abridgement of that right was listed as one of the actions on the part of the British crown that justified American independence enumerated in the Declaration of Independence, *see* The Declaration of Independence paras. 2–3 (U.S. 1776) (stating that the "repeated injuries" in which the monarch had engaged included "depriving us in many cases, of the benefits of Trial by Jury") and the necessity for preserving that right is enshrined in both the federal and state constitutions, *see* U.S. Const. amend. VI (providing that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial . . . by an impartial jury of the State and district where in the crime shall have been committed . . . ."); N.C. Const. art. I, § 24 (providing that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court . . . ."). As result, it is impossible, at least in my view, to overstate the fundamental importance of the right to trial by jury in the law of this state and this nation.

¶ 28      For many years, individuals charged with the commission of criminal offenses in North Carolina lacked the ability to waive the right to trial by jury. *State v. Hudson*, 280 N.C. 74, 79 (1971) (stating that "[i]t is equally rudimentary that a trial by jury in a criminal action cannot be waived by the accused in the Superior Court as long as his plea remains 'not guilty' "). In 2014, however, the people of North Carolina voted in favor of a constitutional amendment authorizing criminal defendants in non-capital cases to waive their right to a jury trial "in writing or on the record in the

court and with the consent of the trial judge . . . subject to procedures prescribed by the General Assembly." N.C. Const. art. I, § 24. In the aftermath of the adoption of this amendment, the General Assembly enacted legislation providing that "[a] defendant accused of any criminal offense for which the State is not seeking a sentence of death in superior court may, knowingly and voluntarily, in writing or on the record in the court and with the consent of the trial judge, waive the right to trial by jury," N.C.G.S. § 15A-1201(b) (2019), and delineating the procedures that were required to be followed in instances in which a criminal defendant sought to waive his or her right to trial by jury. Among other things, the General Assembly stated that, "[b]efore consenting to a defendant's waiver of the right to a trial by jury," the trial court "shall do all of the following:

> (1)     Address the defendant personally and determine whether the defendant fully understands and appreciates the consequences of the defendant's decision to waive the right to trial by jury.
>
> (2)     Determine whether the State objects to the waiver and, if so, why. Consider the arguments presented by both the State and the defendant regarding the defendant's waiver of a jury trial.

N.C.G.S. § 15A-1201(d). As a result, in order to ensure that a defendant's waiver of the right to a jury trial satisfied the constitutional requirement that it be knowing and voluntary, *State v. Thacker*, 301 N.C. 348, 354 (1980) (stating that "[the waiver of counsel, like the waiver of all constitutional rights, must be knowing and

voluntary . . . ”), the General Assembly has prescribed statutory prerequisites that must be satisfied before a knowing and voluntary waiver of the right to trial by jury can be said to have occurred.

¶ 29        Although the majority acknowledges that “the trial court’s colloquy” with defendant was “untimely,” it fails to acknowledge the seriousness of the trial court’s failure to take timely action to ensure that defendant’s waiver of his right to a jury trial was knowing and voluntary and makes no mention of the additional ways in which the trial court failed to comply with the requirements of N.C.G.S. § 15A-1201(d).  Although N.C.G.S. § 15A-1201(d) clearly contemplates that the trial court would personally address the defendant and determine whether the defendant knowingly and voluntarily waived the right to a jury trial prior to the beginning of the trial, the trial court’s colloquy with defendant comes at pages 57 and 58 of a 75-page trial transcript and occurred after the State had rested its case against defendant.  As a result, jeopardy had already attached and the vast majority of the trial had already been completed before the trial court personally addressed defendant for the purpose of determining whether he wished to waive his right to trial by jury.[1]  As a result, I am inclined to believe that the “untimeliness” of the trial

---

[1] Although the Court suggests that this delay actually worked to defendant’s benefit on the theory that “defendant had the unique authority to compel the trial court to declare a mistrial” and “was arguably in a better position to enter a knowing and voluntary waiver at this point in the proceedings than he would have been if the inquiry had occurred prior to

court's colloquy with defendant was a much more serious error than the majority's opinion would appear to suggest.

¶ 30        Secondly, and even more importantly, the trial court failed to "determine whether the defendant fully underst[ood] and appreciate[d] the consequences of [his] decision to waive the right to trial by jury." N.C.G.S. § 15A-1201(d)(1). Although N.C.G.S. § 15A-1201(d)(1) clearly contemplates that the trial court would personally determine that the defendant understood the consequences of his or her decision to waive the right to a jury trial, the trial court, instead, asked defendant's trial counsel to "explain that to your client." According to decisions of this Court in the waiver-of-counsel context, the trial court is not entitled to delegate responsibility for explaining the consequences of a decision to waive a constitutional right to the defendant's attorney. *State v. Pruitt*, 322 N.C. 600, 604 (1988) (stating that "[i]t is the trial court's duty to conduct the inquiry of defendant to ensure that defendant understands the consequences of his decision"); *State v. Bullock*, 316 N.C. 180, 186 (1986) (holding that nothing in N.C.G.S. § 15A-1242, which governs the waiver of a defendant's right to counsel, "makes it inapplicable to defendants who are magistrates, or even attorneys or judges"). Moreover, even if the trial court was entitled to rely upon defendant's trial counsel to help him inform defendant about "the consequences of the defendant's

---

trial," the record provides no basis for believing that defendant had any idea what would have happened had he declined to proceed without a jury.

decision to waive the right to trial by jury," N.C.G.S. § 15A-1201(d)(1), the record in this case is completely silent with respect to what, if anything, defendant may have been told by his trial counsel during the conversation that was held in response to the trial court's request. Finally, the trial court's colloquy with defendant was limited to an inquiry concerning whether defendant consented to his trial counsel's actions in waiving his right to a jury trial and whether defendant understood that he was charged with speeding coupled with a statement that the speeding offense "carr[ied] a possible fine" and might "carry [the] possibility of a 20-day jail sentence." For that reason, given the trial court's failure to explain that defendant had the right to be tried by a jury rather than by the trial court sitting without a jury and what the two methods of proceeding in defendant's case might entail, "there is nothing in the record which shows that defendant understood and appreciated the consequences of" waiving his right to trial by jury. *Pruitt*, 322 N.C. at 604. As a result, I am unable to join my colleagues in concluding that the trial court's delayed colloquy constituted a mere "technical" violation of N.C.G.S. § 15A-1201(d) and believe, instead, that the trial court's noncompliance with the requirements of N.C.G.S. § 15A-1201(d)(1) was substantial.[2]

---

[2] According to the majority, "defendant contends that the trial court's failure to follow the statutorily-prescribed procedure for waiver of a jury trial deprived him of a jury trial that he did not want." In making this statement, my colleagues appear to be assuming the answer to the inquiry that N.C.G.S. § 15A-1201(d) requires the trial court to make on the basis of an

The majority misapprehends the nature of the trial court's error in another respect as well. Although the majority repeatedly states that "the failure of the trial court to conduct an inquiry pursuant to the procedures set forth in N.C.G.S. § 15A-1201(d) is a statutory violation" and that "defendant's argument does not relate to the constitutional sufficiency of a properly functioning jury," this set of statements overlooks the constitutionally-based logic that led to the enactment of N.C.G.S. § 15A-1201. As I read the relevant statutory language, the requirements set out in N.C.G.S. § 15A-1201, like the requirements enunciated in the right-to-counsel context as enacted in N.C.G.S. § 15A-1242, are intended to ensure that a criminal defendant who elects to waive his or her right to trial by jury does so consistently with the constitutional requirement that such waivers be knowingly and voluntarily made by a defendant who has been fully apprised of the potential ramifications of his or her decision. For that reason, since a valid waiver is necessary before a defendant is allowed to forgo his or her right to trial by jury, a trial court's decision to allow a defendant to opt for a bench trial in the absence of a valid waiver results in a deprivation of the constitutionally-guaranteed right to trial by jury. As a result, the

---

inquiry that even they appear to recognize was less than optimal. Simply put, the entire purpose of the inquiry required by N.C.G.S. § 15A-1201(d)(1) is to permit a proper determination of the extent to which a fully informed defendant did or did not wish to exercise his state constitutional right to trial by jury. In the absence of substantial compliance with N.C.G.S. § 15A-1201(d), we simply cannot know what defendant would have wanted to do had he been properly informed of the consequences of the decision that he was being asked to make.

only remaining issue that needs to be addressed in this case is the remedy, if any, to which defendant is entitled given the defect in the proceedings that led to the entry of the trial court's judgment.

¶ 32      The majority's remedy-related discussion rests upon the application of the "structural error" jurisprudence that has been developed by the Supreme Court of the United States.  The majority's reliance upon structural error is, however, misplaced. "North Carolina courts . . . apply a form of structural error known as error per se," with "error per se [being] automatically deemed prejudicial and thus reversible without a showing of prejudice."  *State v. Lawrence*, 365 N.C. 506, 514 (2012). According to this Court, "federal structural error and state error per se have developed independently" in light of the fact that, while the question of whether a federal constitutional error is or is not harmless is a matter of federal law, the state courts are free to develop their own prejudice-related rules.  *Id.*  As a result, given that this Court utilizes an error per se approach rather than a structural error approach in determining whether a showing of prejudice is necessary to justify an award of appellate relief based upon a state law claim, the majority's decision to use a structural error approach in this case rests upon a misapprehension of the applicable law.[3]

---

[3] As an aside, we note that the Supreme Court of the United States has stated that, in light of "the Sixth Amendment's clear command to afford jury trials in serious criminal

¶ 33          This Court has held that a number of related violations of the defendant's right to a trial by jury constituted error per se.  In *State v. Poindexter*, 353 N.C. 440, 444, this Court held that a defendant's conviction that rested upon "a guilty verdict by a jury composed of less than twelve qualified jurors" which resulted from the misconduct of one of the members of the jury as it had been originally empaneled constituted error per se.  *Id.* at 444.  In reaching that conclusion, we stated that a trial by an "improperly constituted" jury was "so fundamentally flawed that the verdict [could] not stand," with "a violation of a defendant's constitutional right to have the verdict determined by twelve jurors constitut[ing] error *per se*" that was "not subject to harmless error analysis."  *Id.*; *see also State v. Bindyke*, 288 N.C. 608, 629 (1975) (holding that "[t]he presence of an alternate juror in the jury room at any time during the jury's deliberations will void the trial"); *State v. Bunning*, 346 N.C. 253, 257 (1997) (awarding the defendant a new sentencing hearing in a capital case in which the trial court allowed an alternate juror to participate in the jury's

---

cases[, w]here th[e] right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt," given that "the error in such a case is that the wrong entity judged the defendant guilty."  *Rose v. Clark*, 478 U.S. 570, 578 (1986) (citations omitted); *see also Sullivan v. Lousiana*, 508 U.S. 275, 281-82 (1993) (stating that, since "[t]he right to trial by jury reflects . . . a profound judgment about the way in which law should be enforced and justice administered,' " "[t]he deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.' " (citations omitted) (quoting *Duncan v. Lousiana*, 391 U.S. 145, 155 (1968)).  As a result, it would appear to me that, even if the applicable mode of analysis involved structural error rather than error per se, defendant would be entitled to an award of appellate relief in this case.

deliberations after they had already begun for the purpose of replacing a juror who had mental health-related difficulties on the grounds that a "trial by a jury which is improperly constituted is so fundamentally flawed that the verdict cannot stand"). In the same vein, we held in *Hudson*, 280 N.C. at 80, that a verdict returned by a jury consisting of only eleven members which was allowed to render a decision after one of the original jurors had become ill and was unable to participate in the jury's deliberations was a "nullity." As a result, as the majority acknowledges, "the deprivation of a properly functioning jury may be a constitutional violation" and certainly constitutes error per se.

I am, quite frankly, unable to see any meaningful distinction between the facts of this case, on the one hand, and the facts at issue in *Poindexter*, *Bindyke*, *Bunning*, and *Hudson*, on the other.[4] In other words, it seems to me that, if a conviction by eleven or thirteen, rather than twelve jurors, results in error per se, a conviction obtained without a valid waiver of the right to a jury trial must necessarily constitute

---

[4] According to the majority, the outcome in this case is controlled by *State v. Garcia*, 358 N.C. 382 (2004), in which the Court rejected a contention that the trial court's failure to require the prosecutor to pass a full panel of prospective jurors to the defendant constituted structural error on the grounds that the defendant had "failed to show that he was denied trial by a fair and impartial jury or to show that any other constitutional error resulted from the jury selection procedure employed at his trial" and that defendant had, instead, "shown only a technical violation of the state jury selection statute." *Id.* at 410. An error in the order in which the parties are entitled to question and challenge prospective jurors bears no resemblance to a case, like this one, in which the defendant was tried by the trial judge, rather than a jury, in the absence of a valid waiver of his right to trial by jury resulting in a deprivation of that right.

error per se as well. After all, a conviction based upon a verdict by a trial judge, sitting without a jury, is tantamount to a verdict without any number of jurors at all. As a result, it seems clear to me that the trial court's failure to ensure that defendant properly waived his right to trial by jury constituted error per se.[5]

¶ 35      The approach that I believe to be appropriate in this case is indistinguishable from the one that this Court has consistently utilized in cases involving the absence of a valid waiver of the right to counsel. According to N.C.G.S. § 15A-1242,

> [a] defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

---

[5] The majority seems to suggest that a mere statutory violation can never constitute error per se. However, this Court has found error per se in cases in which the trial court violated N.C.G.S. § 84-14, *State v. Mitchell*, 321 N.C. 650, 659 (1988) (quoting N.C.G.S. § 84-14) (providing that, "in capital felonies, the time of argument of counsel may not be limited otherwise than by consent, except that the court may limit the number of those who may address the jury to three counsel on each side"), and N.C.G.S. § 7A-450(b1), *State v. Parker*, 350 N.C. 411, 421 (1999) (citing N.C.G.S. § N.C.G.S. § 7A-31-450(b1) (mandating the appointment of two counsel to represent defendants in capital cases); *State v. Brown*, 325 N.C. 427, 426 (1989); *State v. Hucks*, 323 N.C. 574, 581 (1988). As a result, any suggestion to the effect that error per se can only occur in connection with constitutional violations would be erroneous.

N.C.G.S. § 15A-1242 (2019).[6]  In *State v. Moore*, 362 N.C. 319 (2008), this Court held that the trial court had failed to "make an adequate determination pursuant to N.C.G.S. § 15A-1242" before allowing the defendant to proceed pro se and that this error was prejudicial and required reversal.  *Id.* at 320–21; *see also Bullock*, 316 N.C. at 186 (holding that "[i]t was prejudicial error for the trial court to proceed to trial without conducting the statutory inquiry in order to clearly establish whether the defendant voluntarily, knowingly and intelligently waived his right to counsel"); *Pruitt*, 322 N.C. at 604 (holding that the defendant was entitled to a new trial when there was "nothing in the record which show[ed] that defendant understood and appreciated the consequences of proceeding *pro se*" or "understood the 'nature of the charges and proceedings and the range of permissible punishments' " as required by N.C.G.S. § 15A-1242).  Thus, even though this Court has never held that a deprivation of the right to counsel in violation of N.C.G.S. § 15A-1242 constitutes error per se in so many words, our prior decisions clearly reflect that such a violation of the defendant's right to counsel necessitates an award of appellate relief without any necessity for a showing of prejudice.  As a result of the substantial similarities between the language of N.C.G.S. § 15A-1201(d) and the language of N.C.G.S. § 15A-

---

[6] The similarity between the statutory language contained in N.C.G.S. § 15A-1242 and the statutory language contained in N.C.G.S. § 15A-1201(d) is striking, a fact that gives added force to the analogy set out in the text of this dissenting opinion.

1242 and the similar purposes that these statutory provisions are intended to serve, the fact that this Court has treated violations of N.C.G.S. § 15A-1242 as if they constituted error per se strongly suggests that a similar approach should be utilized when violations of N.C.G.S. § 15A-1201(d) occur.

¶ 36        Admittedly, defendant was not charged with nor convicted of a violent crime or offense involving a significant loss of property in this case. In addition, the majority is correct in noting that the State's case against defendant was strong. Under such circumstances, it is tempting to make every effort to avoid overturning a conviction when the underlying result does not seem fundamentally unfair at a substantive, as compared to a procedural, level. On the other hand, the Court's decision, aside from departing from what seem to me to be well-established principles of North Carolina law, has ramifications that extend far beyond the facts of this case to much more serious criminal actions. For that reason, we should all remember the old adage that "hard cases make bad law" and attempt to avoid violating that principle in this case. As a result, for all of these reasons, I would hold that defendant did not properly waive his right to trial by jury, that the absence of a proper waiver resulted in a deprivation of defendant's right to trial by jury, that the failure to obtain a proper waiver of defendant's right to a jury trial constituted error per se, and that defendant is entitled to a new trial and respectfully dissent from my colleagues' decision to the contrary.

Justices HUDSON and EARLS join in this dissenting opinion.